LCLAIBORNE, J.
The defendant-appellant, Louisiana Patient’s Compensation Fund (LPCF), appeals a judgment rendered in accordance with a jury verdict awarding damages to plaintiff-appellee, Fadeka Joyce Adeola, a minor child.[2] LPCF alleges the trial court erred in qualifying an expert and not allowing the proper cross-examination of the expert in the presence of the jury, thereby preventing the jury from having a basis for evaluating credibility, and resulting in an exorbitant damage award. For the following reasons, we vacate and remand for a new trial.
FACTS
On March 28, 1996, the nine-month-old plaintiff was taken by her mother for a well-baby checkup at her pediatrician’s office. The pediatrician, Dr. Shawn M. Kemmerly, ordered routine blood work, which was drawn from plaintiffs left forearm. Three days later, plaintiff was favoring her left arm, so her mother again took plaintiff to see Dr. Kemmerly. Dr. Kem-merly diagnosed a sprained left wrist. Plaintiffs problems persisted with swelling, pain and fever. She was referred to an orthopedic surgeon, Dr. Niels J. Lin-schoten, and a pediatric orthopedic specialist, Dr. Michael A. Frierson. Plaintiff was eventually diagnosed with a staphylococcus aureus bacterial infection of an unknown origin, and was hospitalized. The infection was surgically drained, but the infection had already begun to invade plaintiffs radius bone resulting in a severe bone infection, osteomyelitis. The infection caused a complete resorption (i.e., disappearance) of the center portion of the radius bone, resulting in a club-hand deformity in plaintiffs left forearm and hand.
When plaintiff was two-and-a-half years old, she was referred by her new pediatrician to another pediatric orthopedic surgeon, Dr. Stephen D. Heinrich. Dr. Heinrich surgically reconstructed plaintiffs left forearm. A donor bone (allograft) |3was placed where plaintiffs radius bone was originally located, and it was attached with multiple hardware. It was necessary to reposition and realign the ulna bone as well. The reconstruction resulted in a two-and-a-half-inch shortening of plaintiffs left arm. Approximately nine months after the reconstructive surgery, plaintiff suffered a fracture in the allograft bone and had to undergo further surgery to stabilize the reconstructed radius. This surgery involved another bone graft, this time from plaintiffs hip (the iliac crest bone). After approximately three years of inpatient and outpatient treatments, surgeries, casts, physical therapy, and pain, plaintiffs injured arm healed. However, plaintiff was left with a weaker, shorter, severely scarred arm, in addition to permanent limitations on her activities and movements.
Plaintiff[3] filed a complaint and malpractice suit against the Ochsner Clinic and the *725 physicians initially involved in her treatment, Drs. Kemmerly, Linschoten and Fri-erson. She claimed negligence for misdiagnosis and' mistreatment of the serious bone infection. She later amended her petition to name LPCF as an additional defendant. A Medical Review Panel unanimously concluded that the defendants failed to comply with the appropriate standard of care, and plaintiff entered into a settlement with Ochsner Clinic and its physicians whereby the defendants agreed to pay plaintiff the statutory maximum of $100,000 in exchange for their release. Plaintiff reserved her rights against LPCF pursuant to the Medical Malpractice Act and proceeded to trial. The quantum issue was tried before a jury on March 20 and 21, 2001. The jury returned a verdict in favor of plaintiff, awarding $46,916.66 for past medical expenses, $453,083.34 for general damages, and $250,000 for future medical expenses, totaling $750,000, plus interest and costs. LPCF appeals.
J^DISCUSSION
LPCF contends that the testimony of Dr. Robert Voogt, as an expert in the field of life care planning and rehabilitation, was improperly admitted. LPCF also contends the trial court erred in not affording it the opportunity to cross-examine Dr. Voogt concerning his credentials in the presence of the jury. At trial, when plaintiff called Dr. Voogt as a witness, LPCF immediately requested that the trial court have a DaubeH/Foret hearing outside the presence of the jury to determine the admissibility of Dr. Voogt’s testimony. The trial court granted LPCF’s request and conducted an extensive hearing. Dr. Voogt’s educational background and credentials were explored. Dr. Voogt also explained that life care planning involves taking a person’s medical disability, determining the- functional limitations and ramifications on the person’s daily activities, and then formulating a dollar amount for the functional impact of the disability. After the hearing, the trial court found as follows:
THE COURT: The court has reviewed the curriculum vitae of Dr. Robert D. Voogt, PHD, am impressed with his education and training.... The court is also impressed with his extensive list of articles authored, co-authored, presentations. The court is of the opinion that he is eminently qualified as a life care planner and a rehabilitation expert.
The court is very mindful that this matter is controlled by 702. The court is of the opinion that the trier of fact will benefit from the testimony of this expert at this time in the case and, therefore, the court will allow the jury to hear it.
Before the jury was brought back, the following exchange took place between the trial court judge and LPCF’s counsel, Mr. W. Luther Wilson:
MR. WILSON: May I make an inquiry of the court?.
THE COURT: Certainly.
MR. WILSON: I know we are going to go through this exercise with the jury, but I don’t want—
THE COURT: It will be very abbreviated. We spent the last hour doing this, and I will summarize the court’s finding.
[[Image here]]
MR. WILSON: I don’t want any testimony where he comes up and says this is the girl’s disability. He is not a doctor. He’s not a physical -therapist. I don’t want any testimony dealing with economics because he’s not an economist. He testified per se that he did not *726 do a marketplace analysis, so he cannot put prices on things. He has no basis for that, and that is part of my objection. I don’t mind the court’s ruling, which I object to for the record, but there is a whole lot more to it that needs to be addressed. For instance, can he give a medical opinion?
THE COURT: Mr. Wilson, the court made a ruling based upon what the court has been presented. Now if Dr. Voogt has any medical training, he’s not presented it in his curriculum vitae.
MR. WILSON: That’s correct.
THE COURT: But I will tell you without fear of contradiction that almost everybody on that jury has been to a medical doctor and will be able to discern for themselves how much stock to put in a medical opinion.
[[Image here]]
THE COURT: The court has set out his field of expertise. The court has allowed the submission into evidence of the curriculum vitae and will allow it to be published to the jury and they can make a decision as to how much weight to give the opinion.
At that point in the trial, the jury was brought back and the following exchange took place:
THE COURT: Swear in the witness, Mr. Clerk. Ladies and gentlemen of the jury, as previously indicated to you, from time to time it’s necessary to have legal hearings outside the presence of the jury.... After extensive hearing, the court has found Dr. Voogt to be an expert in the field of life care planning and rehabilitation.
The court has received into evidence his curriculum vitae, together with a copy of his report rendered in connection with the work he has done in this case. They have been previously marked as identified and they will be there for publication to you.
As previously indicated, the court has instructed you as to testimony of expert witnesses because even though the court finds one to be an expert, the weight to be given is decided by you. Everybody understand that instruction from yesterday? All right. That means you can cut to the chase and you may publish the curriculum vitae and the report.
IfiMR. WILSON: Your honor, are we going to have a voir dire?
THE COURT: Not an additional voir dire.
MR. WILSON: I can just pick it up on cross?
THE COURT: Not another voir dire. We did that outside the jury at your request.
MR. WILSON: May we approach the bench?
THE COURT: Yes, sir.
[[Image here]]
MR. WILSON: If he is going to publish the credentials to the jury before they hear his testimony, I think I have the right to cross-examine him on his credentials before the jury. The Daubert is not a substitute for voir dire before the jury. They are entitled to know.
THE COURT: I don’t want to spend another hour on his credentials. They are there and in the record and if you have questions you want to ask him or if he’s misinformed or anything on that, fine.
* ❖ ❖
THE COURT: Mr. Wilson, these people know what a doctor is.
MR. WILSON: But they don’t know the role he plays here.
THE COURT: Mr. Wilson, we are not going through that long song and dance, I am telling you ahead of time.
*727 MR. WILSON: I will make the objections I have to make.
After plaintiff had questioned Dr. Voogt, counsel for LPCF began cross-examination, but was not allowed to question Dr. Voogt as to his background and credentials. The following exchange took place:
Q. It’s been established, sir, that you’re not a medical doctor.
A. That’s right.
Q. Are you a psychologist?
THE COURT: Mr. Wilson, you asked me whether I would permit that line of questioning, and I told you at that time the court recognized the field of expertise. He’s not offered as any of those other professionals. We had a long and elaborate Daubert hearing on that issue and you have previously been instructed not to ask that line |7of questioning and, please, adhere to the admonitions of the court, Mr. Wilson.
MR. WILSON: All right.
THE COURT: Thank you kindly.
MR. WILSON: Let my objection be noted and I will continue it.
The trial court has great discretion in determining whether to qualify a witness as an expert, and such discretion will not be disturbed on appeal in the absence of manifest error. Lemaire v. CIBA-GEIGY Corp., 99-1809, p. 16 (La.App. 1st Cir.6/22/01), 798 So.2d 336, 349, writ denied, 2001-2153 (La.11/16/01), 802 So.2d 608. In State v. Foret, 628 So.2d 1116, 1121-23 (La.1993), the Louisiana Supreme Court accepted the test for reliability of expert scientific testimony set out by the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Daubert decision requires the trial court to act in a gate-keeping function to “ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.” Daubert, 509 U.S. at 589, 113 S.Ct. at 2795. The Daubert decision includes some suggestions as to how a court could fulfill its gate-keeping role, and also notes that there is a possibility that the expert’s testimony can be quite misleading and prejudicial if the gate-keeping role is not properly satisfied. Therefore, a flexible approach is required, along with a careful evaluation of the methodology surrounding the testimony and its conclusions. See Foret, 628 So.2d at 1122. See also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 149, 119 S.Ct. 1167, 1175, 143 L.Ed.2d 238 (1999), wherein the United States Supreme Court clarified that the Daubert gate-keeping obligation applies not only to “scientific” testimony, but to all expert testimony.
In exercising this gate-keeping function, the trial court properly conducted a hearing to determine the admissibility of Dr. Voogt’s testimony. After considering | sarguments of both parties, the trial court concluded that Dr. Voogt qualified under the Daubert/Foret standards. We have thoroughly reviewed the testimony and evidence presented at the hearing and find no abuse of' discretion in the trial court’s decision to qualify Dr. Voogt as an expert witness in the field of life care planning and rehabilitation. Nevertheless, the trial court’s conclusion to allow the witness to testify did not end the matter. The weight to be given to expert opinion testimony is a jury question, separate from the issue of admissibility of the expert opinion. LPCF was entitled to full cross-examination of Dr. Voogt’s qualifications and credentials before the jury.
It is beyond dispute that the trial court has the right to control the nature, extent and character of cross-examination; however, the trial court cannot deprive a litigant of the procedural right of cross-examination in the interest of judicial economy and other well-intentioned motives. *728 Labadot v. Labadot, 328 So.2d 747, 749 (La.App. 4th Cir.1976). See also La.Code Civ. P. arts. 1681 and 1634. An expert’s background, experience, and credentials are certainly proper grounds for cross-examination. Thibaut v. Thibaut, 607 So.2d 587, 600 (La.App. 1st Cir.1992), writs denied, 612 So.2d 37, 38 and 101 (La.1993). Without a full cross-examination of Dr. Voogt’s background, qualifications and credentials, the jury could not properly weigh Dr. Voogt’s testimony and evidence, nor properly determine the value of the evidence and testimony. The lack of a full cross-examination impermissibly denied LPCF the right to fully present its case and therefore, it was denied the right to a fair trial. See Harry Bourg Corp. v. Punch, 625 So.2d 735, 737 (La.App. 1st Cir.1993).
LPCF was denied an opportunity to fully expose weaknesses in the expert’s testimony. The jury must have the opportunity to make credibility determinations after a full examination of the expert’s credentials, qualifications and background. See Fussell v. Roadrunner Towing and Recovery, Inc., 99-0194, p. 6 (La.App. 1st Cir.3/31/00), 765 So.2d 373, 377-78, writ denied, 2000-1264 (La.6/23/00), 765 So.2d 1042. Generally, where a jury verdict is tainted due to a material error at trial, making it untrustworthy, then the verdict must be overturned; however, when an otherwise complete trial record exists, the general rule is that an appellate court should, if it can, render judgment on the record. Jones v. Black, 95-2530 (La.6/28/96), 676 So.2d 1067. However, where the credibility of a key witness is of critical importance and the lack of full disclosure of the witness’s background makes the testimony prejudicial, the case must be remanded for a new trial. See Wilson v. PNS Stores, Inc., 98-1004, p. 14 (La.App. 4th Cir.12/16/98), 725 So.2d 66, 73-74. We conclude that Dr. Voogt’s testimony, the weight of his testimony, and the credibility determination regarding his credentials and qualifications as an expert witness, were of critical importance to the jury’s decision. We cannot conduct a meaningful de novo review because it would involve eliminating all of Dr. Voogt’s testimony, thereby depriving plaintiff of a jury trial on the quantum issue. Therefore, we must vacate the judgment and remand the case for a new trial. The other issue raised on appeal regarding the amount of damages awarded need not be considered.
CONCLUSION
For the foregoing reasons, we vacate the judgment ■ of the trial court and remand this case for a new trial. Costs are to await the final disposition of this matter.
VACATED AND REMANDED.

.Plaintiff’s first name, Fadeka, is spelled "Fadeka” and "Fadeke” interchangeably throughout the petition and record.

.Plaintiff's parents, Francis and Grace Adeo-la, brought the instant suit on their minor *725 child's behalf.