951 So.2d 307 (2006)
David Michael LIEUX and Lucile Arden Lieux, Individually, and on Behalf of their Minor Son, Frederick Joseph Lieux, II
v.
Dr. Charles F. MITCHELL, d/b/a Ent Medical Center and Saint Paul Fire and Marine Insurance Company.
No. 2006 CA 0382.
Court of Appeal of Louisiana, First Circuit.
December 28, 2006.
Rehearing Denied March 28, 2007.
*309 Sean D. Fagan, Baton Rouge, Counsel for Plaintiffs/Appellants David Michael Lieux and Lucile Arden Lieux, Individually and on behalf of their minor son, Frederick Joseph Lieux, II.
John Swanner, Baton Rouge, Counsel for Defendants/Appellees Dr. Charles F. Mitchell and St. Paul Fire and Marine Insurance Company.
Before: PARRO, GUIDRY, and McCLENDON, JJ.
GUIDRY, J.
In this medical malpractice suit, plaintiffs, David Michael Lieux and Lucile Arden Lieux, individually and on behalf of their minor son, Frederick Joseph Lieux, II, appeal a summary judgment dismissing their claims against defendants, Dr. Charles F. Mitchell, d/b/a ENT Medical Center, and St. Paul Fire and Marine Insurance Company (St. Paul). For the reasons assigned, we affirm.

FACTS AND PROCEDURAL HISTORY
On May 29, 1998, Dr. Charles F. Mitchell performed several surgical procedures on Frederick Lieux in order to alleviate his chronic ear infections, including the insertion of tubes into his ears, removal of the adenoids, and a maxillary sinus irrigation. Frederick is the son of David and Lucile Lieux and was approximately seven months old at the time of the surgery. During the sinus irrigation procedure, a hydrogen peroxide solution used for irrigation of the sinuses entered the orbital cavity behind the child's right eye, causing rapid swelling and pressure on the eye. Dr. Mitchell immediately recognized the problem and instructed a nurse to find an ophthalmologist. The nurse was able to quickly locate an ophthalmologist near the operating room, and he performed a lateral canthotomy, a procedure involving the cutting of the eyelid. Although the procedure was successful in relieving the pressure and saving the child's eyesight, it resulted in Frederick having a drooping eyelid. He subsequently underwent two surgical procedures to correct the deformity, but each was unsuccessful. Since it appeared the procedures might have failed due to the child's youth, his parents were advised to wait until Frederick was older before again scheduling corrective surgery.
*310 Plaintiffs filed a complaint with the Louisiana Patients' Compensation Board against Dr. Mitchell, a qualified healthcare provider under the Medical Malpractice Act. See La. R.S. 40:1299.41 A(1). A medical review panel was convened and ultimately issued an opinion that unanimously concluded that "[t]he evidence does not support the conclusion that the defendant [Dr. Mitchell] failed to meet the applicable standard of care as charged in the complaint. The conduct complained of was not a factor of the damages complained of by plaintiff." On July 26, 2001, plaintiffs filed a petition seeking damages from Dr. Mitchell and his liability insurer, St. Paul, alleging that Dr. Mitchell breached the standard of care in performing the maxillary sinus irrigation and causing the peroxide solution to enter the right orbital cavity, in performing the procedure on a child of Frederick's age and medical status, and in failing to use irrigation tools appropriate in size to the child's age.
In interrogatories propounded to plaintiffs almost three years later, defendants requested the names and addresses of any expert witnesses plaintiffs intended to call at trial in support of their claims. Plaintiffs responded on June 8, 2004, stating "[t]his information has not been determined at this time, but will be forwarded upon determination." Defendants filed a motion for summary judgment on March 23, 2005, on the grounds that the medical review panel concluded Dr. Mitchell had not breached the applicable standard of care and plaintiffs had failed to name any expert witness who would testify to the contrary. The motion was set for hearing on July 11, 2005.
Several days before the scheduled hearing, plaintiffs filed a motion to continue on the grounds that their expert had withdrawn unexpectedly from the case and they needed additional time to contact Dr. Scott Manning, a pediatric ear, nose and throat specialist (ENT) in Seattle, Washington, for an expert opinion. The district court granted the continuance, over defendants' objection, but it indicated it was doing so only for the limited purpose of allowing plaintiffs' counsel to retain Dr. Manning and not to give counsel an opportunity to begin a search for new experts. The hearing on the motion for summary judgment was rescheduled for December 12, 2005.
On October 27, 2005, plaintiffs' counsel noticed a deposition of Dr. John L. Guarisco, a member of the medical review panel that considered this matter. In response, defense counsel filed a motion for an ex parte order preventing Dr. Guarisco's deposition or, in the alternative, for an expedited hearing on the matter. Plaintiffs' counsel filed a written opposition to the motion. Without holding a hearing, the district court signed an order on November 3, 2005, prohibiting plaintiffs from deposing Dr. Guarisco.
After a hearing on December 12, 2005, the district court granted summary judgment in favor of defendants dismissing plaintiffs' claims on the grounds they failed to present expert testimony raising any issues of fact as to whether Dr. Mitchell breached the applicable standard of care. A written judgment dismissing plaintiffs' claims, with prejudice, was thereafter signed. Plaintiffs now appeal, raising two assignments of error: (1) the district court erred in prohibiting them from taking Dr. Guarisco's deposition; and (2) the district court erred in finding no genuine issues of material fact precluding summary judgment.

ASSIGNMENT OF ERROR NUMBER ONE
Plaintiffs argue the district court erred *311 in issuing an ex parte order[1] prohibiting them from taking Dr. Guarisco's deposition. In the opinion issued by the medical review panel, Dr. Guarisco indicated he believed the complication that occurred in this case was a material risk of sinus irrigation that should have been disclosed by Dr. Mitchell.[2] Plaintiffs planned to depose Dr. Guarisco on this issue, as well as to challenge the basis of the medical review panel's opinion. They contend the trial court's refusal to allow the deposition effectively deprived them of their right to cross-examine a key witness and was in clear derogation of La. R.S. 40:1299.47 H.
An understanding of the procedural background leading to the district court's order is essential to a consideration of plaintiffs' arguments. Plaintiffs filed a motion to continue the original hearing date on defendants' motion for summary judgment on the grounds that, because their original medical expert unexpectedly withdrew from the case, they needed additional time to retain Dr. Manning, a pediatric ENT, as their expert witness. Plaintiffs' counsel stated he had made numerous attempts to contact Dr. Manning, but was only able to reach him on one occasion. The district court granted the continuation over defendants' objection, but explained it was doing so with the following parameters:[3]
I'm going to allow you to pursue the follow-up of Dr. Scott Manning. What I'm not going to have is that this time is going to be used as an opportunity to start searching for new experts, because the only reason I'm granting the continuance today is that the withdrawal of somebody who previously committed as an expert, the reference to another physician who may fill in. Regardless of what Dr. Manning says, if he finds there's no breach of the standard of care, then we're going to go forward on that basis on the motion for summary judgment.
. . . .
So I don't want to prejudice your clients [plaintiffs] because of the late withdrawal of an expert, but on the same vein, I don't want to prejudice the defendants because of the time that's passed in this case. You're either going to get an expert, Dr. Manning, or we're going to go with the summary judgment.
*312 The hearing on defendants' motion for summary judgment was rescheduled for December 12, 2005. On October 27, 2005, plaintiffs noticed the deposition of Dr. Guarisco to be taken on November 10, 2005. In response, defense counsel filed a motion for an ex parte order to prohibit the taking of Dr. Guarisco's deposition or, in the alternative, for an expedited hearing on the motion. In the motion, defendants asserted that taking Dr. Guarisco's deposition would violate the district court's prior ruling that the continuance was granted for the limited purpose of allowing the plaintiffs to retain Dr. Manning as an expert witness. In a written opposition, plaintiffs argued that deposing Dr. Guarisco would not violate the district court's ruling, which they maintained was intended only to ensure they would not use the continuance to search for a "new" expert witness. Plaintiffs pointed out that Dr. Guarisco was not a new expert, since all the parties had known of him since his appointment to the medical review panel. Without holding a contradictory hearing, the district court signed an order on November 3, 2005, prohibiting plaintiffs from deposing Dr. Guarisco.
A party generally may obtain discovery of any information that is relevant to the subject matter involved in the pending action. See La. C.C.P. art. 1422. The court has broad discretion in ruling on discovery matters, including the discretion to deny discovery. See La. C.C.P. art. 1426; Laburre v. East Jefferson General Hospital, 555 So.2d 1381, 1385 (La. 1990). In its discretion, a court can refuse or limit discovery of matters not relevant, unreasonably vexatious, or tardily sought. Lehmann v. American Southern Home Insurance Company, 615 So.2d 923, 925 (La. App. 1st Cir.), writ denied, 617 So.2d 913 (La. 1993). See Belonga v. Crescent City Dodge, L.L.C., XXXX-XXXX, p. 2 (La. 3/9/01), 781 So.2d 1247, 1248.
The record reveals the present suit was filed in July 2001, several months after the medical review panel issued its opinion. Defendants' motion for summary judgment was not filed until March 2005. Therefore, plaintiffs had the opportunity for almost four years to take Dr. Guarisco's deposition. At no time during this period did plaintiffs attempt to depose him. Instead, they waited until after a hearing date was set on defendants' motion for summary judgment to do so. Plaintiffs obtained a continuance of that hearing on the specific grounds that additional time was needed to retain Dr. Manning as an expert. Plaintiffs allege Dr. Manning eventually advised them he was contractually precluded from acting as their expert. However, at no time from the date the continuance was granted on July 11, 2005, until plaintiffs' opposition was filed on November 2, 2005, did plaintiffs' counsel inform the district court that Dr. Manning was unavailable or seek a modification of the court's prior ruling as to the limited purpose of the continuance.
Based on our review, we find no error in the district court's order. There was a period of almost four years from the filing of suit until defendants filed their motion for summary judgment. Although plaintiffs had the opportunity to depose Dr. Guarisco during this extended period, they made no attempt to do so. At the time plaintiffs were granted the continuance, over seven years had passed since the surgery giving rise to this suit. The district court expressed concern that defendants might be prejudiced as a result of the extensive delay that had already occurred in this matter. Moreover, the district court granted plaintiffs the continuance for the specific purpose of retaining Dr. Manning as an expert, not to allow *313 them to begin discovery that could have been conducted during the nearly four year period between suit being filed and defendants' motion for summary judgment. Under these circumstances, we find no abuse of the district court's broad discretion in the order prohibiting Dr. Guarisco's deposition.
Plaintiffs rely on Adeola v. Kemmerly, XXXX-XXXX, p. 8 (La.App. 1st Cir. 6/21/02), 822 So.2d 722, 727, writs denied, 2002-2354 (La. 11/15/02), 829 So.2d 438, and 2002-2413 (La. 11/22/02), 829 So.2d 1054, as support for their argument that the district court's refusal to allow Dr. Guarisco's deposition deprived them of the right to cross-examine a key defense witness, since defendants relied on the opinion of the medical review panel to support their motion for summary judgment. In Adeola, the trial court refused to allow defense counsel to cross-examine the plaintiff's expert before the jury on his background, qualifications, and credentials. This court vacated the trial court judgment on the grounds that, while a trial court has the right to control the nature, extent, and character of cross-examination, it cannot deprive a party of the procedural right of cross-examination in the interest of judicial economy and other well-intentioned motives. Adeola, XXXX-XXXX at p. 9, 822 So.2d at 728.
Adeola is factually distinguishable from the present case. In Adeola, the trial court totally deprived the defendant of an opportunity at trial to cross-examine the plaintiffs expert on his background and qualifications. In contrast, the plaintiffs herein had almost four years prior to the filing of the motion for summary judgment during which they had every opportunity to depose Dr. Guarisco. Rather than depriving plaintiffs of their only opportunity to cross-examine an expert witness, the district court herein merely prevented plaintiffs from doing so at the late stage of the summary judgment proceedings.
We also find no merit in plaintiffs' argument that the district court's order was in clear derogation of La. R.S. 40:1299.47 H. This provision provides, in pertinent part, that "either party shall have the right to call, at his cost, any member of the medical review panel as a witness. If called, the witness shall be required to appear and testify." See Medine v. Roniger, XXXX-XXXX, pp. 13-14 (La. 7/2/04), 879 So.2d 706, 715-16 (supreme court finding that La. R.S. 40:1299.47 H required panelists on medical review panels to testify if called to do so by a party.)
Thus, plaintiffs assert they had a right to discovery of the evidence they planned to develop through Dr. Guarisco's deposition. Initially, we note that the right to discovery is not unlimited. See La. C.C.P. art. 1426; Laburre, 555 So.2d at 1385. In its discretion, a court can refuse or limit discovery of matters that are tardily sought. See Lehmann, 615 So.2d at 925. We agree that plaintiffs had a right to call Dr. Guarisco as a witness, had they done so in a timely manner. However, the right granted by La. R.S. 40:1299.47 H should be considered in conjunction with the district court's broad discretion to refuse discovery of matters not relevant, unreasonably vexatious, or tardily sought. See La. C.C.P. art. 1426; Lehmann, 615 So.2d at 925. As previously noted, plaintiffs did not attempt to depose Dr. Guarisco until more than four years after the opinion of the medical review panel was issued and suit was filed. Moreover, when they did finally attempt to depose him, it was only after a hearing date had twice been set on defendants' motion for summary judgment, plaintiffs having obtained a continuance of the original hearing date. For these reasons, we do not find the district court *314 abused its broad discretion in limiting discovery under the present facts.

ASSIGNMENT OF ERROR NUMBER TWO
Plaintiffs contend the trial court erred in failing to conclude that genuine issues of material fact existed that precluded summary judgment.
An appellate court reviews the district court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Boland v. West Feliciana Parish Police Jury, XXXX-XXXX, p. 4 (La.App. 1st Cir. 6/25/04), 878 So.2d 808, 812, writ denied, 2004-2286 (La. 11/24/04), 888 So.2d 231. A motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B; Independent Fire Insurance Company v. Sunbeam Corporation, 99-2181, p. 7 (La. 2/29/00), 755 So.2d 226, 230-31.
If the moving party will not bear the burden of proof at trial on the matter before the court on the motion for summary judgment, the moving party must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. If the adverse party then fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact and summary judgment must be granted. La. C.C.P. art. 966 C(2); Boland, XXXX-XXXX at p. 4, 878 So.2d at 813.
Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Craig v. Bantek West, Inc., XXXX-XXXX, p. 7 (La.App. 1st Cir. 9/17/04), 885 So.2d 1241, 1245. In order to prevail in a medical malpractice action, a plaintiff is required to establish: (1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians within the involved medical specialty; (2) that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill; and (3) that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred. See La. R.S. 9:2794 A. In other words, the plaintiff must establish the standard of care applicable to the doctor, a breach of that standard of care, and that the substandard care caused an injury the plaintiff otherwise would not have suffered. Hoot v. Woman's Hospital Foundation, 96-1136, p. 5 (La.App. 1st Cir. 3/27/97), 691 So.2d 786, 789, writ denied, 97-1651 (La. 10/3/97), 701 So.2d 209 (citing Martin v. East Jefferson General Hospital, 582 So.2d 1272, 1276 (La. 1991)).
An expert witness is generally necessary as a matter of law to meet the burden of proof on a medical malpractice claim. Fagan v. LeBlanc, 2004-2743, p. 6 (La.App. 1st Cir. 2/10/06), 928 So.2d 571, *315 575. Although there are exceptions in instances of obvious negligence, those exceptions are limited to instances in which the medical and factual issues are such that a lay jury can perceive negligence in the charged physician's conduct as well as any expert can. Fagan, 2004-2743 at p. 6, 928 So.2d at 575. Moreover, this requirement of producing expert medical testimony is especially apt when the defendant has filed a motion for summary judgment and supported such motion with expert opinion evidence that the treatment met the applicable standard of care. Fagan, 2004-2743 at pp. 6-7, 928 So.2d at 575-76.
In the instant case, plaintiffs contend Dr. Mitchell was negligent in using hydrogen peroxide as the irrigant in the sinus irrigation procedure. Plaintiffs bear the burden of proof for these claims of medical malpractice. Since defendants would not bear the burden of proof at trial, they were only required to point out an absence of support for one or more elements essential to plaintiffs' claims against them.
Defendants did so by supporting their motion with the unanimous opinion of the medical review panel. In this opinion, the panel concluded the evidence did not support plaintiffs' claims that Dr. Mitchell failed to meet the applicable standard of care. Further, the opinion specifically found that "[t]he choice of a peroxide solution by Dr. Mitchell played no special causative role in the complication which developed in this case, and was not below the standard of care for him to utilize a peroxide solution in the sinus irrigation." Defendants also submitted Dr. Mitchell's deposition describing both the reasons for the surgical procedures performed and the performance of those procedures. Dr. Mitchell also explained that he used hydrogen peroxide as an irrigant at that time because, due to its effervescent activity and the release of oxygen, he found with patients he irrigated with peroxide that "their postoperative recovery was less, the need for antibiotic was less, their restoration to good sinus health was quicker."
This evidence satisfied defendants' burden of pointing out an absence of support for an essential element of plaintiffs' claims, i.e., that the use of a hydrogen peroxide solution violated the applicable standard of care. Plaintiffs were required at this point to produce factual evidence sufficient to establish that they would be able to satisfy their evidentiary burden of proof on this issue at trial. Since their claim was not of such a nature that a lay jury could perceive negligence in Dr. Mitchell's conduct just as well as any expert could, they had to provide expert medical testimony to support their claim that Dr. Mitchell breached the applicable standard of care. See Fagan, 2004-2743 at p. 6, 928 So.2d at 575.
Plaintiffs failed to present any expert testimony regarding the applicable standard of care. Rather, to meet their burden, they relied on Dr. Mitchell's deposition testimony that, because saline does not have an effervescent effect like hydrogen peroxide does, it does not create the possibility of the type of complication that occurred in this case if it leaks into the orbital cavity. Plaintiffs further note that Dr. Mitchell admitted there was no medical reason requiring the use of hydrogen peroxide, but that he used it as a matter of personal preference. They emphasize he failed to indicate other surgeons also used hydrogen peroxide as an irrigant. Plaintiffs also point out that Dr. Mitchell was well aware of the possibility of the irrigant solution leaking into the orbital cavity, since he stated in his deposition that it had occurred on two prior sinus irrigation procedures that he had performed. Finally, plaintiffs contend the *316 fact that Dr. Mitchell paid a portion of the child's medical expenses was a tacit admission he breached the standard of care by using hydrogen peroxide as an irrigant.
Based on our review of the record and the evidence as outlined above, we find the district court did not err in granting defendants' motion for summary judgment as to plaintiffs' claim that Dr. Mitchell breached the standard of care by using hydrogen peroxide as an irrigant. The evidence relied on by plaintiffs was insufficient to refute the unanimous expert opinion of the medical review panel that the use of hydrogen peroxide did not breach the applicable standard of care. Plaintiffs' claim that it did breach the standard of care does not present a situation where a lay jury could perceive negligence in the charged physician's conduct as well as an expert could. Therefore, in the absence of any expert evidence that the use of hydrogen peroxide breached the applicable standard of care, the district court did not err in granting defendants' motion for summary judgment on this claim.[4]
Plaintiffs also contend Dr. Mitchell was negligent in introducing the hydrogen peroxide solution after he felt two pops when entering the maxillary sinus cavity, since he indicated in his deposition that it was normal to hear a single pop. According to plaintiffs, the second pop might have meant that Dr. Mitchell had penetrated the floor of the sinus cavity with the canula, allowing hydrogen peroxide to enter the orbital cavity. Plaintiffs argue this deposition testimony created a genuine issue of material fact as to whether Dr. Mitchell was negligent in introducing the hydrogen peroxide solution under those circumstances.
Plaintiffs' contention that Dr. Mitchell heard two pops upon entering the maxillary sinus cavity was based on the deposition testimony of Frederick's parents to the effect that Dr. Mitchell told them after the surgery that he had heard two pops. However, contrary to plaintiffs' contentions, Dr. Mitchell did not specifically indicate it was normal to hear only a single pop. Rather, in describing the sinus irrigation procedure, he indicated a little pop was heard upon entering the sinus cavity because the opening was always swollen. However, he was not asked, and did not indicate, whether it would have been abnormal to hear a second pop. Moreover, when asked if it was possible to perforate the floor of the sinus cavity, he stated he believed in that case one would feel some obstruction, causing an awkward sensation different than what one normally felt when entering the sinus cavity. There was no indication he experienced such a sensation while performing the procedure in this case. Further, his deposition testimony indicates he introduced the hydrogen peroxide solution slowly and cautiously.
The medical review panel found no breach of the applicable standard of care in this case. However, plaintiffs maintain the panel failed to address the issue of whether Dr. Mitchell was negligent in introducing *317 the irrigant solution after hearing two pops. Plaintiffs base this assertion on the fact that the panel's opinion did not set forth a specific finding on this issue, as it did with respect to several other claims. Nevertheless, regardless of whether or not the panel delineated a specific finding on this claim, after considering all the evidence submitted, it reached the ultimate conclusion that the evidence did not support plaintiffs' claims that Dr. Mitchell breached the applicable standard of care. Thus, defendants met their burden of showing an absence of factual support for an element of plaintiffs' malpractice claim, namely that they would be unable to prove that Dr. Mitchell breached the standard of care. Plaintiffs then failed to come forward with sufficient factual support in the form of expert testimony to show that they would be able to meet their evidentiary burden at trial. Accordingly, the district court properly granted summary judgment on this claim of malpractice.
Finally, plaintiffs argue that summary judgment also was improper because genuine issues of material fact existed regarding the issue of informed consent. However, we do not reach the merits of this argument. Although informed consent was an issue presented to the medical review panel, we agree with the district court's conclusion that the plaintiffs' petition in this suit fails to allege any facts raising a claim of lack of informed consent.
Louisiana is a fact-pleading jurisprudence. Mehta v. Baton Rouge Oil Company, Inc., 99-1773, p. 5 (La.App. 1st Cir. 9/22/00), 768 So.2d 243, 246. Since "theory of the case" pleading has been abandoned, the courts of this state require only that a pleading set forth the facts upon which relief may be granted. See La. C.C.P. art. 891; Spencer-Wallington, Inc. v. Service Merchandise, Inc., 562 So.2d 1060, 1064 (La.App. 1st Cir.), writ denied, 567 So.2d 109 (La. 1990). Recovery may be granted to a party under any legal theory justified by the facts pled. See La. C.C.P. art. 862; Mehta, 99-1773 at p. 5, 768 So.2d at 246; Spencer-Wallington, Inc., 562 So.2d at 1064. However, the petition must set forth facts upon which such recovery can be based. Sledge v. Continental Casualty Co., 25,770, p. 20 (La.App. 2nd Cir. 6/24/94), 639 So.2d 805, 819.
In Gunter v. Plauche, 439 So.2d 437, 440 (La. 1983), the Louisiana Supreme Court recognized that a claim for surgical malpractice and a claim for breach of the duty to obtain informed consent are distinct causes of action, based on different statutory duties.[5] Thus, facts that raise a claim of surgical malpractice do not necessarily encompass a claim for lack of informed consent.[6] On appeal, plaintiffs argue that the allegations of paragraph thirteen of their petition is broad enough to include a claim *318 for lack of informed consent. This paragraph provides as follows:
Petitioners allege that Charles F. Mitchell, M.D., breached the standard of care in performing the maxillary sinus irrigation on Frederick Joseph Lieux, II, and that as a result, the child has suffered and will continue to suffer substantial physical and mental pain associated with the initial surgery, as well as with all subsequent and future procedures.
We do not agree that these allegations, which relate specifically to the performance of the surgery, are sufficient to raise a claim for lack of informed consent. Moreover, our thorough review of the entire petition reveals that it sets forth no factual events, such as consultations or discussions with the physician or his staff, that relate to informed consent. The petition contains absolutely no facts that can reasonably be construed as forming the basis for or alleging a claim for lack of informed consent. Accordingly, we find no error in the district court's conclusion that a claim for lack of informed consent was not properly before it.

CONCLUSION
For the above reasons, the judgment of the district court, granting defendants' motion for summary judgment and dismissing plaintiffs' claims, with prejudice, is affirmed. Plaintiffs are to pay all costs of this appeal.
AFFIRMED.
McCLENDON, J., concurs and assigns reasons.
McCLENDON, J., concurs, and assigns reasons.
I do not believe that deposing Dr. Guarisco amounts to taking the deposition of a "new" expert witness, since Dr. Guarisco was already an expert whose opinion had been rendered in the medical review panel and, therefore, I would have found an abuse of the trial court's discretion in prohibiting his deposition. However, the evidence that was being sought through Dr. Guarisco's testimony concerned the issue of informed consent and I agree that plaintiffs' petition fails to allege any facts raising a claim relating to informed consent, or the lack thereof. Therefore, the taking of Dr. Guarisco's deposition would have been a vain act, and accordingly I concur with the result reached by the majority.
NOTES
[1] We note that the order is not actually an ex parte order as asserted by plaintiffs. An order is considered to be "ex parte when it is taken or granted at the instance and for the benefit of one party only, and without notice to, or contestation by, any person adversely interested." Black's Law Dictionary 399 (abridged 6th ed. 1991) (emphasis added). In this case, despite the fact that defendants requested an ex parte order in their motion, it is undisputed that they served opposing counsel with a copy of the motion and he actually filed a written opposition to the motion. Thus, even though no contradictory hearing was held, the district court did not issue an ex parte order, since opposing counsel received notice of the motion and had an opportunity to be heard on it through a written opposition before the order was signed. In any event, we note that La. C.C.P. art. 963 provides that "[i]f the order applied for by written motion is one to which mover is clearly entitled without supporting proof, the court may grant the order ex parte and without hearing the adverse party." Since the motion at issue was based on the allegation that deposing Dr. Guarisco would violate the district court's own ruling, it appears to have raised a matter peculiarly within the district court's own knowledge on which no supporting proof was necessary.
[2] The other two physician panel members disagreed with this conclusion because of the rarity of the complication.
[3] Plaintiffs did not seek supervisory writs from this ruling, nor assign error to it on appeal.
[4] Plaintiffs also argue Dr. Mitchell's deposition testimony makes it clear that the complication that occurred in this case would not have happened but for his use of a hydrogen peroxide solution as an irrigant. Plaintiffs argue that, since this testimony is at odds with the conclusion of the medical review panel that the hydrogen peroxide solution "played no special causative role in the complication which developed in this case," a genuine issue of material fact exists as to causation. However, because plaintiffs have failed to produce factual evidence sufficient to establish they would be able to satisfy their evidentiary burden of proving a breach of the applicable standard of care at trial, it is unnecessary to reach the issue of causation. Thus, any issue that might exist as to causation is not a material issue of fact that would preclude summary judgment in this case.
[5] A general medical malpractice claim is governed by La. R.S. 9:2794, while a claim for breach of the duty to obtain informed consent is governed by La. R.S. 40:1299.40.
[6] In a general malpractice claim, the plaintiff must establish the standard of care applicable to the doctor, a breach of that standard of care, and that the substandard care caused an injury the plaintiff otherwise would not have suffered. See Hoot, 96-1136 at p. 5, 691 So.2d at 789. The plaintiff in a lack of informed consent case must prove that a physician failed to disclose all material information and that there was a causal relationship between the physician's failure and the damages claimed by the patient. See Lugenbuhl v. Dowling, 96-1575, p. 12 (La. 10/10/97), 701 So.2d 447, 454; Boyd v. Louisiana Medical Mutual Insurance Company, 593 So.2d 427, 429 (La.App. 1st Cir. 1991), writ denied, 594 So.2d 877 (La. 1992).