36 So.3d 281 (2010)
Robert Thomas McGREGOR, Son of Donald H. McGregor, and Ruth McGregor, Individually and on Behalf of Her Deceased Husband, Donald H. McGregor
v.
HOSPICE CARE OF LOUISIANA IN BATON ROUGE, L.L.C. d/b/a Hospice of Baton Rouge; Hospice Care of Louisiana, Inc.; the Hospice Foundation of Greater Baton Rouge d/b/a Hospice of Baton Rouge; Kathryn Grigsby; Cynthia Logan; Melanie Hyatt; and Katherine Braud.
Robert Thomas McGregor, Individually and Ruth McGregor, Individually and on Behalf of the Succession of Donald H. McGregor
v.
Dr. Gerald Miletello and Dr. Georgia A. Reine.
Nos. 2009 CA 1355, 2009 CA 1356.
Court of Appeal of Louisiana, First Circuit.
February 12, 2010.
Rehearing Denied March 11, 2010.
Writ Denied May 28, 2010.
*282 Roy A. Raspanti, Metairie, and John Massicot, New Orleans, for Plaintiffs/Appellants *283 Robert T. McGregor, and Ruth McGregor individually and on behalf and of her deceased husband, Donald H. McGregor.
Myron A. Walker, Baton Rouge, for Defendants/Appellees Hospice Foundation of Greater Baton Rouge d/b/a Hospice of Baton Rouge, Melanie Hyatt, Katherine E. Braud, and Kathryn Grigsby.
Deborah J. Juneau, Linda G. Rodrigue, Vance A. Gibbs, Baton Rouge, for Defendants/Appellees Dr. Gerald Miletello, Dr. Georgia Reine, and LAMMICO.
Before CARTER, C.J., GUIDRY, and PETTIGREW, JJ.
GUIDRY, J.
In this medical malpractice action, plaintiffs, Robert McGregor and Ruth McGregor, appeal from two trial court judgments granting summary judgment in favor of Dr. Gerald Miletello, Dr. Georgia Reine, and Louisiana Medical Mutual Insurance Company (LAMMICO). For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
Donald McGregor, father and husband of the plaintiffs, had terminal metastatic prostate cancer. He was treated for this disease by Dr. Miletello, an oncologist, from 1997 through his death on July 21, 2002. On April 30, 2002, Donald enrolled as a patient of Hospice of Baton Rouge (Hospice), because he could no longer visit Dr. Miletello in his office. Thereafter, Hospice nurses visited Donald in his home several times a week and reported their findings to Dr. Miletello. In turn, Dr. Miletello would make medical determinations based on those findings, which included prescribing pain medication.
In June and early July 2002, Dr. Miletello prescribed Duragesic patches for Donald's long term pain control and morphine suppositories for his breakthrough pain. On July 19, 2002, a Hospice nurse visited Donald, and based on her assessment, Dr. Miletello wrote a prescription for 40 morphine suppositories to be administered 1-2 per hour as needed for pain. The prescription also noted that it may be partially filled; however, Dr. Miletello had instructed Hospice that 20 suppositories should be released on July 19, and the remaining 20 were not to be released until Monday, July 22.
Robert McGregor called Hospice several times between July 19 and July 21, concerned that the 20 morphine suppositories was not enough medication to last Donald until Monday and stating that his father was in pain and needed the additional 20 suppositories. After his last call on Sunday, July 21, Hospice's on call nurse, Melanie Hyatt, informed Hospice's Director of Nurses, Katherine Braud, and Dr. Reine, a member of Dr. Miletello's oncology group who was on call for Dr. Miletello that weekend, that Robert refused to allow her to go and assess Donald and that Robert was exhibiting threatening behavior toward her. Thereafter, nurse Hyatt called Robert and informed him that Hospice was discharging Donald from their care.
After receiving the call from nurse Hyatt, Robert called Dr. Reine directly, asking if she was aware that Hospice had discharged his father, and she stated that she concurred in Hospice's decision. Later that day, Donald's family called an ambulance and took Donald to the hospital where he died that evening.
Thereafter, the plaintiffs filed a complaint against Drs. Miletello and Reine, and Hospice Foundation of Greater Baton Rouge, Inc. d/b/a Hospice of Baton Rouge, Kathryn Grigsby, Melanie Hyatt, and *284 Katherine Braud (collectively referred to as "Hospice defendants") with the Commissioner of Administration requesting formation of a medical review panel. The plaintiffs were subsequently advised that the Hospice defendants were not qualified with the patient's compensation fund. As such, on October 14, 2003, the plaintiffs filed a petition for damages against the Hospice defendants under docket number 512,840, asserting their negligence in failing to release the remaining 20 morphine suppositories between July 19 and 21 and in abandoning Donald by discharging him from their care on Sunday, July 21.
A medical review panel was convened to address the claims raised against Drs. Miletello and Reine. On June 15, 2004, the panel issued an opinion finding that the evidence did not support the conclusion that the defendants failed to meet the applicable standard of care. Thereafter, the plaintiffs filed a petition for damages against Dr. Miletello and Dr. Reine, as well as their insurer, LAMMICO, under docket number 524,336 and asserted their negligence in failing to authorize the release of the additional 20 morphine suppositories and for abandoning Donald on July 21. This matter was subsequently consolidated with the matter against the Hospice defendants.
On April 28, 2008, the Hospice defendants filed a motion for summary judgment asserting that res judicata precluded the plaintiffs from asserting their claims against the Hospice defendants, and alternatively, that the plaintiffs lacked expert testimony to establish that there was a deviation from the standard of care by any of the Hospice defendants. Dr. Miletello, Dr. Reine, and LAMMICO also filed motions for summary judgment, asserting that the plaintiffs had provided no testimony from an expert who was qualified to render an opinion as to the standard of care applicable to Drs. Miletello and Reine.
Following a hearing on the above motions, the trial court rendered judgments in favor of all defendants granting them summary judgment and dismissing the plaintiffs' claims against them with prejudice. Plaintiffs subsequently filed a motion for new trial, which was denied. Plaintiffs now appeal from the judgments rendered in favor of Dr. Miletello, Dr. Reine, and LAMMICO.[1]

DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. McNeil v. Miller, 08-1973, p. 3 (La.App. 1st Cir.3/27/09), 10 So.3d 327, 329.
The burden of proof on a motion for summary judgment is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim. Thereafter, if the adverse party fails to provide evidence sufficient to establish that he will be able to satisfy his *285 evidentiary burden of proof at trial, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. C.C.P. art. 966(C)(2); Robles v. ExxonMobile, 02-0854, p. 4 (La.App. 1st Cir.3/28/03), 844 So.2d 339, 341.
In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of material fact. Hines v. Garrett, 04-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is "material" for summary judgment purposes can only be seen in light of the substantive law applicable to the case. Richard v. Hall, 03-1488, p. 5 (La.4/23/04), 874 So.2d 131, 137.
In a medical malpractice action against a physician, the plaintiff must establish by a preponderance of the evidence the applicable standard of care, a violation of that standard of care, and a causal connection between the alleged negligence and the plaintiffs injuries. See La. R.S. 9:2794(A); see also Pfiffner v. Correa, 94-0924, p. 8 (La.10/17/94), 643 So.2d 1228, 1233. An expert witness is generally necessary as a matter of law to meet the burden of proof on a medical malpractice claim. Lieux v. Mitchell, 06-0382, p. 11 (La.App. 1st Cir.12/28/06), 951 So.2d 307, 314, writ denied, 07-0905 (La.6/15/07), 958 So.2d 1199. Although the jurisprudence has recognized exceptions in instances of obvious negligence, those exceptions are limited to instances in which the medical and factual issues are such that a lay jury can perceive negligence in the charged physician's conduct as well as any expert can. Pfiffner, 94-0924 at p. 9, 643 So.2d at 1234. Moreover, this requirement of producing expert testimony is especially apt when the defendant has filed a motion for summary judgment and supported such motion with expert opinion evidence that the treatment met the applicable standard of care. Lieux, 06-0382 at p. 11, 951 So.2d at 315.

Dr. Miletello
In support of his motion for summary judgment, Dr. Miletello submitted copies of the medical review panel opinion, the affidavit of Dr. Bryan Bienvenu, an oncologist who served on the review panel, the deposition of Dr. Jay Brooks, also an oncologist who served on the review panel, and the deposition of Dr. Bruce Samuels, plaintiffs expert witness, all of which stated that Dr. Miletello had complied with the standard of care in prescribing pain medication to Donald McGregor on July 19, 2002. Particularly, Dr. Samuels stated that he did not have "any adverse opinions to [Dr. Miletello], other than I couldn't quite understand why he would have prescribed a smaller amount of pain medicine for a man that he knew was using a lot more. And, that's really probably a judgment call on his part ... and I don't think... you can say ... with certainty that that's a definite deviation of the standard of care." Ultimately, Dr. Samuels responded "No" when specifically asked if Dr. Miletello breached the standard of care in prescribing pain medication to Donald. Additionally, Dr. Samuels stated that he had no other opinions regarding Dr. Miletello and a breach of the standard of care.
Plaintiffs responded to the motion for summary judgment by submitting deposition testimony from their expert, Dr. Samuels, and Dr. Brooks. Plaintiffs asserted that Dr. Samuels and Dr. Brooks stated that the philosophy of hospice and the standard of care in caring for a patient under these circumstances is for the health *286 care provider to supply the highest degree of pain control that keeps the patient comfortable to the patient's wishes. However, both doctors stated that ultimately, the decision on the amount of pain medication to prescribe is a judgment call by the physician. Further, Dr. Samuels specifically stated on several occasions during the course of his deposition, even after being questioned by plaintiffs' counsel, that he did not have any opinion that Dr. Miletello breached the standard of care. Accordingly, from our review of the record, we find that the plaintiffs failed to establish that they would be able to satisfy their evidentiary burden of proof at trial. Therefore, we find no error in the trial court's judgment, granting summary judgment in favor of Dr. Miletello and LAMMICO and dismissing plaintiffs' claims against them with prejudice.

Dr. Reine
In support of her motion for summary judgment, Dr. Reine submitted copies of the medical review panel opinion, the affidavit of Dr. Bienvenu, the deposition of Dr. Brooks, Dr. Reine's deposition and affidavit, and Dr. Miletello's deposition. Dr. Reine asserted that the above evidence demonstrated that she complied with the applicable standard of care. Additionally, Dr. Reine submitted the deposition testimony of Dr. Samuels and asserted that based on the information contained therein, the plaintiffs had failed to identify an expert who practiced in Dr. Reine's specialty of medical oncology, and alternatively, that if Dr. Samuels is considered an expert qualified to render an opinion in this matter, his opinion was based on an erroneous assumption of facts which are not supported by the record.
In opposing Dr. Reine's motion for summary judgment, the plaintiffs primarily relied on Dr. Samuel's testimony. Plaintiffs assert that Dr. Samuels, who specializes in internal medicine, is qualified to render an opinion as to Dr. Reine's breach of the standard of care in failing to authorize the release of the remaining pain medication and in discharging and/or abandoning Donald on Sunday, July 21.
Based on our review of Dr. Samuels' deposition, though he addressed several issues, he specifically stated that he was only rendering an opinion as to Dr. Reine's breach of the standard of care in discharging Donald on July 21, 2002. Further, it appears that the conclusion by Dr. Samuels that Dr. Reine breached the standard of care by discharging Donald without providing the appropriate notice, thereby effectively abandoning Donald, is based on facts which are not supported by the record. Particularly, Dr. Samuels stated that his opinion was based on his impression that Dr. Reine and Dr. Miletello were a part of Hospice and that a discharge by Hospice was also a discharge by Dr. Reine and Dr. Miletello. However, the evidence in the record demonstrates that Dr. Reine and Dr. Miletello were private physicians who had their own oncology practice and referred patients to Hospice for care when the patients could no longer come into their office for treatment. There is no evidence that Dr. Reine had any employment, financial, or contractual relationship with Hospice. Further, when questioned during his deposition, Dr. Samuels even admitted that if there was no such relationship between a doctor and Hospice, then a discharge by Hospice would have no effect on the doctor's relationship with his patient.
Likewise, there is no evidence that Dr. Reine informed the plaintiffs that she was discharging Donald from her and Dr. Miletello's care. Her only contact with the plaintiffs was in a phone conversation on Sunday, July 21, when Robert called her and asked her if she was aware that Hospice had discharged his father, wherein *287 she responded that she "concurred" in that decision.
Therefore, from our review of the record, we find that the plaintiffs failed to produce evidence establishing that they will be able to satisfy their evidentiary burden of proof at trial. Accordingly, we find no error in the trial court's granting of summary judgment in favor of Dr. Reine and LAMMICO and dismissing plaintiffs' claims against them with prejudice.[2]

CONCLUSION
For the foregoing reasons, we affirm the judgments of the trial court granting summary judgment in favor of Dr. Gerald Miletello, Dr. Georgia Reine, and Louisiana Medical Mutual Insurance Company and dismissing plaintiffs' claims against them with prejudice. All costs of this appeal are assessed against the plaintiffs, Robert McGregor and Ruth McGregor.
AFFIRMED.
NOTES
[1] Plaintiffs separately appealed from the judgment rendered in favor of the Hospice defendants, which is addressed in McGregor v. Hospice Care of Louisiana in Baton Rouge, L.L.C., 09-1357, 09-1358 (La.App. 1st Cir.2/12/10), 36 So.3d 272, 2010 WL 502954.
[2] In their reply brief, plaintiffs raised as error the trial court's granting of two motions to strike, which were the subject of judgments rendered on June 1, 2007 and January 18, 2008. However, pursuant to Rule 2-12.6 of the Uniform Rules, Courts of Appeal, an appellant may file a reply brief, but it shall be strictly confined to rebuttal of points urged in the appellee's brief. In the instant case, plaintiffs' reply brief goes beyond mere rebuttal and attempts to raise a new legal argument. Therefore, because these issues are not properly before us, we decline to address them. See Fowler v. Bossano, 01-0357, pp. 14-15 (La.App. 3rd Cir.10/3/01), 797 So.2d 160, 169-170.