PETTIGREW, J.
12Plaintiffs appeal a summary judgment dismissing their medical malpractice action against defendant. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
On April 28, 2006, plaintiffs, Patricia Vanner and Letitia Hampton, daughters of Catherine Hampton (“Mrs. Hampton”), along with Jake Vanner, visited Mrs. Hampton at Lakewood Quarters Rehabilitation and Nursing (“Lakewood Quarters”),[1] where she was a resident. Mrs. Hampton was 78 years old at the time, chronically debilitated, had suffered previous strokes resulting in right hemiparesis and contractures of her right upper and lower extremities, and was non ambulatory and non verbal. During this visit with her family, Mrs. Hampton appeared to be doing well physically and was in good spirits. Letitia returned the following day, and Mrs. Hampton’s condition remained the same. On Sunday, April 30, 2006, Letitia again visited her mother. During this visit, Letitia tried to comb her mother’s hair and noticed that Mrs. Hampton appeared to be in a lot of pain on the right side of her body. When Mrs. Hampton’s family visited her the following day, they could hear her moaning as they exited the elevator, located approximately 100 feet from her room. Mrs. Hampton was examined in the emergency room of Our Lady of the Lake Hospital on May 12, 2006, and diagnosed with a broken arm, which required surgical intervention on May 16, 2006.
Plaintiffs instituted this malpractice action against Lakewood Quarters and Landmark of Baton Rouge (“Landmark”) on March 23, 2007, by requesting that a medical review panel be convened pursuant to La. R.S. 40:1299.41, et seq. The medical review panel was formed, with three physicians and an attorney chairman. The panel’s opinion was issued on July 24, 2008. The unanimous opinion stated that “[t]he evidence does not support the conclusion that the defendants failed to meet the applicable standard of Reare as charged in the complaint.” In its supporting reasons, the panel concluded as follows:
Reasons as to [Lakewood Quarters]: This was [a] 78 year old lady who was chronically debilitated. She had previous strokes resulting in right hemipare-sis and contractures of her right upper and lower extremities. The patient was non ambulatory and non verbal.
The patient experienced a fracture In her right humerus while in the nursing home. Such fractures can occur in the routine care of this type of patient considering her multiple comorbidities. *754 This is not necessarily an indication of negligent care.
It is not clear from the record when the fracture actually occurred. When the family became concerned about the patient’s complaints of pain, the nursing home staff appropriately contacted the patient’s physician who ordered an x-ray and a diagnosis was made. The patient was taken to the hospital for further care.
The record did not indicate a clear delay in diagnosis since it is unclear when the fracture actually occurred. However the panel had concerns with the gap in nursing notes' from 5-7-06 to 5-11-06.
Reasons as to [Landmark]: The patient arrived at this facility with ulcers and the staff was reasonable in their care to treat and prevent further occurrences of ulcers.
Subsequently, on August 1, 2008, plaintiffs, individually and on behalf of their mother, who was then deceased, filed a petition for damages naming Lakewood Quarters and Landmark as defendants. Plaintiffs alleged that Lakewood Quarters and Landmark were negligent in failing to properly diagnose Mrs. Hampton’s broken arm and in failing to properly treat and prevent pressure sores.
Lakewood Quarters answered the petition, generally denying the allegations of negligence and asserting numerous affirmative defenses including, but not limited to, prescription and contributory negligence. Landmark similarly filed an answer to the petition, generally denying all allegations of negligence by plaintiffs. Lakewood Quarters subsequently filed a motion for summary judgment, seeking the dismissal of plaintiffs’ claims. Lakewood Quarters asserted that because plaintiffs did not have expert testimony in support of their claims, they could not meet their burden of proof at trial, thus warranting summary judgment. The motion was supported by a copy of the petition, a copy of the complaint submitted to the medical review panel, the medical review panel 14opinion and reasons, plaintiffs’ answers to interrogatories, and plaintiffs’ responses to requests for admissions.
Plaintiffs filed an opposition to the motion for summary judgment, alleging that the “failure to diagnose a broken arm and properly treat or prevent pressure sores shows that no expert witness is required because it is not a difficult area of medicine mandating [an] expert witness.” Plaintiffs argued that in this case a jury could “perceive negligence.”
The matter proceeded to hearing on July 16, 2012, at which time the trial court heard argument from respective counsel. At the conclusion of the hearing, the trial court ruled in favor of Lakewood Quarters, granting the motion for summary judgment. Judgment was signed by the trial court on August 9, 2012, dismissing, with prejudice, plaintiffs’ claims against Lakewood Quarters. In written reasons for judgment dated September 18, 2012, the trial court noted as follows:
Plaintiffs filed suit claiming that the actions of the defendant caused or contributed to the death of their mother. Defendant filed this motion seeking to be dismissed arguing that plaintifffs] [have] not provided expert [testimony] showing ... any malpractice on their part. Additionally, the medical review panel found in favor of defendant and plaintiff[s] [have] not provided evidence that it failed to meet the standard of care or that the alleged failure caused plaintiffs’ mother’s injuries.
Thus, the court found that the plaintiffs could not carry their burden of proof at trial and the motion was granted.
*755 It is from this judgment that plaintiffs have appealed, assigning error to the trial court’s determination that summary judgment was appropriate based upon the absence of expert testimony sufficient to demonstrate that they would be able to meet their burden of proof on the merits.
LAW AND ANALYSIS

Standard of Review and General Principles of Summary Judgment

Summary judgment is subject to de novo review on appeal, using the same standards applicable to the trial court’s determination of the issues. Berard v. L-3 Communications Vertex Aerospace, LLC, 2009-1202, p. 5 (La.App. 1 Cir. 2/12/10), 35 So.3d 334, 339-340, writ denied, 2010-0715 (La.6/4/10), 38 So.3d 302. The summary judgment procedure is expressly favored in the law and is designed to | ^secure the just, speedy, and inexpensive determination of non-domestic civil actions. La.Code Civ. P. art. 966(A)(2). Its purpose is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. Hines v. Garrett, 2004-0806, p. 7 (La.6/25/04), 876 So.2d 764, 769. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966(B).
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require that all essential elements of the adverse party’s claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La.Code Civ. P. art. 966(C)(2); Janney v. Pearce, 2009-2103, p. 5 (La.App. 1 Cir. 5/7/10), 40 So.3d 285, 288-289, writ denied. 2010-1356 (La.9/24/10), 45 So.3d 1078.
In ruling on a motion for summary judgment, the judge’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Hines, 2004-0806 at 1, 876 So.2d at 765. Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor. Willis v. Medders, 2000-2507, p. 2 (La.12/8/00), 775 So.2d 1049, 1050.
| ¡Was Summary Judgment Appropriate Under the Applicable Law?
Louisiana Revised Statutes 9:2794 sets forth the elements that a plaintiff must prove to succeed in a medical malpractice claim against a physician. In summary, the plaintiff must prove, by a preponderance of the evidence; (1) the standard of care applicable to the physician; (2) a violation of that standard of care by the physician; and (3) a causal connection between the physician’s alleged negligence and the claimed injuries. See Pfiffner v. Correa, 94-0924, p. 8 (La.10/17/94), 643 So.2d 1228, 1233. Where the defendant physician practices *756 in a particular specialty and the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians within that specialty. Lieux v. Mitchell, 2006-0382, p. 10 (La.App. 1 Cir. 12/28/06), 951 So.2d 307, 314, writ denied, 2007-0905 (La.6/15/07), 958 So.2d 1199.
Expert testimony is generally required to establish the applicable standard of care and whether that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. Pfiffner, 94-0924 at 9-10, 643 So.2d at 1234. This requirement of producing expert medical testimony is especially apt when the defendant has filed a motion for summary judgment and supported such motion with expert opinion evidence that the treatment met the applicable standard of care. Lieux, 2006-0382 at 11, 951 So.2d at 314. In Pfiffner, the supreme court observed that expert testimony is not always necessary to meet the burden of proof in a medical malpractice case, including “instances in which the medical and factual issues are such that a lay jury can perceive negligence in the charged physician’s conduct as well as any expert can.” Pfiffner, 94-0924 at 9, 643 So.2d at 1234. Other examples of such obvious negligence include “obvious unnecessary delays in treatment,” “[fjailure to attend a patient when the circumstances demonstrate the serious consequences of this failure,” and “failure of an on-call physician to respond to an emergency when he knows or should know that his presence is necessary.” Pfiffner, 94-0924 at 9-10, 643 So.2d at 1234.
17After a thorough review of the record, we conclude that the circumstances of this case do not fall within the category of exceptions to the general rule requiring expert medical testimony to establish the particular medical standard of care and breach of that standard of care. Thus, plaintiffs were required to come forward with medical expert testimony sufficient to satisfy their evidentiary burden of proof at trial. They failed in this burden. Specifically, there is no testimony or evidence in the record that sets forth the standard of care applicable to Lakewood Quarters, that Lakewood Quarters violated any standard of care applicable to it in the care and treatment of Mrs. Hampton, or that any negligent action or omission on Lakewood Quarters’ part caused or contributed to Mrs. Hampton’s alleged injuries. To the contrary, the unrebutted opinion of the medical review panel was that there was no evidence that Lakewood Quarters failed to meet the applicable standard of care and that when plaintiffs did in fact become concerned about Mrs. Hampton’s complaints of pain, the nursing home staff appropriately contacted Mrs. Hampton’s physician who ordered an x-ray and a diagnosis was made.
For the first time on appeal, plaintiffs argue that “[b]y the sworn deposition testimony of the physician who diagnosed the cause of the extreme pain,” they have “satisfied the legislative intent for expert [testimony] in La. R.S. 40:1299.” Plaintiffs are referring to the deposition testimony of Dr. Ricardo Rodriguez, the orthopaedic surgeon who diagnosed Mrs. Hampton’s broken arm and performed the surgery. Plaintiffs note that Dr. Rodriguez testified as follows with regard to Mrs. Hampton’s broken arm: “I think probably in trying to move her or position her arm or something is probably what happened, because obviously she didn’t move it herself or do it herself.”
However, as Lakewood Quarters correctly points out in brief to this court, Dr. *757 Rodriguez did not opine that Lakewood Quarters was negligent in treating Mrs. Hampton. Rather, when asked if he had an opinion as to whether the care provided by Lakewood Quarters was appropriate, Dr. Rodriguez replied, “I have no opinion.” Dr. Rodriguez did indicate that it was not “terribly uncommon” to have a situation where a patient in a nursing home suffers a fracture like Mrs. Hampton did 18and no one is able to determine when or how it happened due to the patient’s condition. Moreover, Dr. Rodriguez agreed with the medical review panel’s opinion that “[s]uch fractures can occur in the routine care of this type of patient considering her multiple comorbidities” and that “[t]his is not necessarily an indication of negligent care.” Thus, even considering Dr. Rodriguez’s deposition as urged by plaintiffs on appeal, his testimony does not help plaintiffs in satisfying their burden of proof on the summary judgment filed by Lakewood Quarters. Lakewood Quarters having established its burden of proof on the motion, it was incumbent upon plaintiffs to produce factual support in the form of expert testimony sufficient to establish that they would be able to satisfy their evidentiary burden of proof at trial on these issues. Plaintiffs failed to do so, and summary judgment was therefore appropriate.
DECREE
For the above and foregoing reasons, we affirm the August 9, 2012 judgment of the trial court. All costs associated with this appeal are assessed against plaintiffs-appellants, Patricia Vanner and Letitia Hampton. AFFIRMED.

. According to the record, Lakewood Quarters was incorrectly named in the petition as "Lakewood Quarters Retirement Community.”