# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 17-633

**CHESTER DOMINGUE**

**VERSUS**

**LOUISIANA GUEST HOUSE, LLC, D/B/A CAMELOT OF BROUSSARD**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20162983
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and John E. Conery, Judges.

**REVERSED AND REMANDED.**

**Kenneth D. St. Pe**
**311 W. University Ave., Ste A**
**Lafayette, LA 70506**
**(337) 534-4043**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Chester Domingue**

**Mark W. Verret**
**Stephen G. Collura**
**Allen & Gooch, ALC**
**3900 N. Causeway Blvd., Suite 1450**
**Metairie, LA 70002**
**(504) 836-5270**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Louisiana Guest House, LLC d/b/a  Camelot of Broussard**

**EZELL, Judge.**

Chester Domingue appeals the decision of the trial court granting summary judgment in favor of Louisiana Guest House, LLC, d/b/a Camelot of Broussard (hereinafter "Camelot"). For the following reasons, we reverse the decision of the trial court.

Mr. Domingue's mother, Onelia, was a resident at Camelot, which is a nursing home in Broussard, Louisiana. The ninety-four-year-old Mrs. Domingue suffered several falls while at Camelot, at least twenty seven, though most did not result in injury. Consequently, she was placed on a fall prevention protocol several times, on an on-and-off basis. After falls, she was placed on fall interventions, such as a toileting protocol, only to have the intervention modified or removed later. As a result of these falls, she was counseled not to attempt to use the restroom by herself, though she frequently did anyway. On April 17, 2014, Mrs. Domingue attempted to use a hall restroom by herself. She slipped while transferring from her wheelchair and struck her head. The fall caused a break in an odontoid and C1 fracture, as well as a concussion. Mrs. Domingue passed away on May 8, 2014, as a result of complications of her fall. Camelot began locking all common area restrooms after Mrs. Domingue's accident.

Mr. Domingue filed the present suit, claiming Camelot failed to properly supervise his mother and prevent her fall. Camelot then filed a motion for summary judgment. The trial court ruled that the evidence presented on the motion showed no violations of federal or state regulations and that Mr. Domingue failed to produce factual support "for one or more elements essential" to his claim. The trial court granted Camelot's motion for summary judgment and dismissed Mr. Domingue's claims. From that decision, Mr. Domingue appeals.

Mr. Domingue asserts two assignments of error on appeal. He claims that the trial court erred in weighing competing expert testimonies to reach a factual determination, and that the trial court erred in "ignoring factual evidence . . . suggesting defendant breached the standard of care." We agree.

## LAW AND DISCUSSION

Summary judgment is subject to *de novo* review on appeal, using the same standards applicable to the trial court's determination of the issues. *Berard v. L–3 Communications Vertex Aerospace*, LLC, 2009-1202, p. 5 (La.App. 1 Cir. 2/12/10), 35 So.3d 334, 339–340, *writ denied*, 2010–0715 (La.6/4/10), 38 So.3d 302. The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. La.Code Civ. P. art. 966(A)(2). Its purpose is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. *Hines v. Garrett*, 2004-0806, p. 7 (La.6/25/04), 876 So.2d 764, 769. Summary judgment is appropriate if the [motion, memorandum, and supporting documents] show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966[(A)(3)].

On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La.Code Civ. P. art. 966[(D)(1)]; *Janney v. Pearce*, 2009-2103, p. 5 (La.App. 1 Cir. 5/7/10), 40 So.3d 285, 288-289 [sic], *writ denied*. 2010-1356 (La.9/24/10), 45 So.3d 1078.

In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Hines*, 2004–0806 at 1, 876 So.2d at 765. Despite the legislative mandate that summary judgments are now favored, **factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor**. *Willis v. Medders*, 2000–2507, p. 2 (La.12/8/00), 775 So.2d 1049, 1050.

. . . .

Louisiana Revised Statutes 9:2794 sets forth the elements that a plaintiff must prove to succeed in a medical malpractice claim against a physician. In summary, the plaintiff must prove, by a preponderance of the evidence; (1) the standard of care applicable to the physician; (2) a violation of that standard of care by the physician; and (3) a causal connection between the physician's alleged negligence and the claimed injuries. *See Pfiffner v. Correa*, 94–0924, p. 8 (La.10/17/94), 643 So.2d 1228, 1233. Where the defendant physician practices in a particular specialty and the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians within that specialty. *Lieux v. Mitchell*, 2006–0382, p. 10 (La.App. 1 Cir. 12/28/06), 951 So.2d 307, 314, *writ denied*, 2007–0905 (La.6/15/07), 958 So.2d 1199.

Expert testimony is generally required to establish the applicable standard of care and whether that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. *Pfiffner*, 94–0924 at 9–10, 643 So.2d at 1234. This requirement of producing expert medical testimony is especially apt when the defendant has filed a motion for summary judgment and supported such motion with expert opinion evidence that the treatment met the applicable standard of care. *Lieux*, 2006–0382 at 11, 951 So.2d at 314. In *Pfiffner*, the supreme court observed that expert testimony is not always necessary to meet the burden of proof in a medical malpractice case, including "instances in which the medical and factual issues are such that a lay jury can perceive negligence in the charged physician's conduct as well as any expert can." *Pfiffner*, 94–0924 at 9, 643 So.2d at 1234. Other examples of such obvious negligence include "obvious unnecessary delays in treatment," "[f]ailure to attend a patient when the circumstances demonstrate the serious consequences of this failure," and "failure of an on-call physician to respond to an emergency when he knows or should know that his presence is necessary." *Pfiffner*, 94–0924 at 9–10, 643 So.2d at 1234.

*Vanner v. Lakewood Quarters Ret. Cmty.*, 12-1828, pp.4-6 (La. App. 1 Cir. 6/7/13), 120 So.3d 752, 755-56 (fifth alteration in original) (bold emphasis ours).

Accordingly, Mr. Domingue was required to come forward with medical expert testimony sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. After a thorough review of the record, we conclude that he did so.

Camelot claims there is no testimony or evidence in the record that sets forth the standard of care applicable to Camelot, or that any negligent action or omission on Camelot's part caused or contributed to Mrs. Domingue's alleged injuries. However, Mr. Domingue introduced the expert affidavit of Patricia Beare, a nursing expert, regarding the standard of care required of Camelot. Though Ms. Beare never specifically used language setting forth a "required standard of care," she cites 42 C.F.R. 483.25(d) in her affidavit, which set forth the general duties that a "resident environment remains as free of accident hazards as possible" and that residents require "adequate supervision," which she notes as providing interventions to mitigate the risk of accidents. She alleged several actions that Camelot "should have" taken to mitigate Mrs. Domingue's obvious fall risk.

She claims that Camelot should have and failed to provide visual indication on Mrs. Domingue's wheelchair that she was an increased fall risk with a star or leaf, as per their own policy, as this would have allowed all nurses in the facility to know of the increased danger of falls for her. Robin Barbry, the nurse who found Mrs. Domingue after her fall, testified in her deposition that no one indicated to her that Mrs. Domingue required increased supervision, and that nurses had no way of knowing if a resident was at risk for falls without the star or leaf sticker indication on their wheelchairs, though Mrs. Domingue had already fallen twenty-seven times at Camelot prior to the April 27, 2014 accident. Ms. Beare testified that "ALL personnel should be aware of residents who are at risk for falls." Additionally, Camelot's fall prevention policy, introduced by Mr. Domingue, lists chair alarms as possible interventions. Mrs. Beare reported that such an alarm or a wheelchair lap belt should have been used to prevent falls or alert nurses to attempts by Mrs. Domingue to transfer out of her wheelchair without the required assistance. Ms. Barbry indicated that no such alarm was in use at the time of Mrs. Domingue's

4

final fall. Mrs. Beare indicated that she felt Mrs. Domingue's "many falls from slipping out of [her wheelchair] could have been prevented with pommel or antithrust pillows or a self releasing lap belt."

As factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor, we find that Ms. Beare's affidavit sufficiently sets forth a standard of care required of Camelot and clearly states that she believed Camelot breached that standard. *Willis*, 775 So.2d 1049.

Contrary to Ms. Beare's affidavit was the medical review panel opinion, which simply made a blanket assertion that the actions named by Ms. Beare were optional interventions that were "not a required standard of care." As there was clearly conflicting expert evidence, a genuine issue of material fact exists in this case as to the required standard of care, and summary judgment was inappropriate. It is apparent that the trial court was presented with this competing evidence and erroneously made credibility determinations, weighing the conflicting evidence. This is evident when reviewing the record, wherein the trial court stated that the medical review panel "spent some time reviewing [the] case, and they found differently" than Ms. Beare. Additionally, the trial court's written reasons note that it "agree[d] with the Panel's findings." Weighing evidence and making credibility determinations are to be addressed at a trial on the merits, not at the summary judgment stage of the proceedings. Because credibility determinations are reserved for the fact finder, and as we have found that genuine issues of material fact exist as to the applicable standard of care required of Camelot, we must reverse the granting of the summary judgment.

For the above reasons, the decision of the trial court below is reversed and the case is remanded for further proceedings consistent with this opinion. Costs of this appeal are hereby assessed against Louisiana Guest House, LLC, D/B/A Camelot of Broussard.

**REVERSED AND REMANDED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal. Rule 2-16.3.