NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-101

MARILYN D. WHITE AND SYLVIA SUE WHITE
INDIVIDUALLY AND ON BEHALF OF
SYLVIA WHITE PEVEY, DECEASED

VERSUS

RAPIDES HEALTHCARE SYSTEM, LLC
D/B/A RAPIDES REGIONAL MEDICAL CENTER, ET AL.

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 259,964 A
HONORABLE MONIQUE F. RAULS, DISTRICT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of Elizabeth A. Pickett, D. Kent Savoie, and Candyce G. Perret, Judges.

REVERSED AND REMANDED.

**David Abboud Thomas**
**Hayden A. Moore**
**Walters, Papillion, Thomas, Cullens, LLC**
**12345 Perkins Road, Building One**
**Baton Rouge, LA  70810**
**(225) 236-3636**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Sylvia Sue White individually and on behalf of Sylvia White Pevey,**
        **Deceased**
    **Marilyn D. White individually and on behalf of Sylvia White Pevey,**
        **Deceased**

**David R. Sobel**
**Nathan W. Friedman**
**Faircloth, Melton, Sobel, & Bash, LLC**
**105 Yorktown Drive**
**Alexandria, LA  71303**
**(318) 619-7755**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Kristin Williams, N.P.**

**Kay Hilgerson Michiels**
**Randall M. Seeser**
**Gold, Weems, Bruser, Sues, & Rundell**
**P.O. Box 6118**
**2001 MacArthur Drive**
**Alexandria, LA   71307-6118**
**(318) 445-6471**
**COUNSEL FOR DEFENDANTS:**
    **Rapides Healthcare System, LLC**
        **d/b/a Rapides Regional Medical Center**
    **Jonathan Augustine, R.N.**

**PERRET, Judge.**

This is a medical malpractice suit brought by Marilyn D. White and Sylvia Sue White, individually and on behalf of their deceased mother, Sylvia White Pevey ("Plaintiffs"). The malpractice suit was brought after Ms. Pevey's death while a patient under the treatment and care of Johnathan Augustine, RN, ("Nurse Augustine") and Kristin Williams, NP, ("NP Williams") at Rapides Regional Medical Center. Plaintiffs appeal the summary judgment granted in favor of NP Williams, dismissing her from the suit. On appeal we reverse the trial court's grant of summary judgment and remand the matter for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND:**

Ms. Pevey, an eighty-eight-year-old woman, was admitted to Rapides Regional Medical Center on March 18, 2014, with a right hip fracture which required surgery. Dr. Joseph Landreneau was contacted for a consultation for cardiac clearance prior to the surgery, which he granted. Ms. Pevey was a patient of Dr. Landreneau for coronary artery disease. Her records indicate that she had stents placed two years prior and had a pacemaker. Her medical records indicate that Dr. William Bates was also contacted for consultation as Ms. Pevey also suffered from diabetes and hypertension. On March 21, 2014, Dr. Daniel Oas, an orthopedist, performed the open treatment of the right intertrochanteric femur fracture with intramedullary nailing of Ms. Pevey's right hip. Postoperatively, Ms. Pevey progressed positively, and her medical records indicate that she was not at risk for aspiration in the days following the surgery.

However, on March 24, 2014, around 9:16 a.m., Ms. Pevey's Clinical Documentation Record indicates her swallowing was impaired. It was about this time that NP Williams, the cardiology Nurse Practitioner for Dr. Landreneau,

testified that she made her rounds to Ms. Pevey's room. Nurse Augustine was already present and administering Ms. Pevey's medication by feeding Ms. Pevey crushed pills with soft food. While Nurse Augustine was administering the medication, Ms. Pevey began exhibiting signs of aspiration and had difficulty swallowing. NP Williams spoke with Ms. Pevey's family who informed NP Williams that Ms. Pevey was lethargic and had "a flat affect, which is not really responding as much as she had been responding to them." NP Williams then examined Ms. Pevey and noticed that she was short of breath and was not able to cough. During the examination, NP Williams recalled that "everything sounded okay except for her lungs" and noted that Ms. Pevey's O2 saturations were dropping. Thereafter, NP Williams ordered Nurse Augustine to titrate oxygen. NP Williams testified in her deposition that after approximately fifteen minutes of being in the room and upon concluding her examination, NP Williams left to update Dr. Landreneau regarding Ms. Pevey's change in condition. NP Williams' progress notes include an entry for Ms. Pevey's vital signs at 10:13 a.m. on March 24.

Ms. Pevey's Clinical Documentation Record indicates that at 9:16 a.m. her swallowing was impaired and that at 9:29 a.m., her "Behavior" was "ASLEEP[.]" At 10:13 a.m. Ms. Pevey's pulse and oxygen levels were recorded. Her records further indicate that around 10:24 a.m., Ms. Pevey coded and that she was successfully intubated at 10:26 a.m. At 10:47 a.m. the record indicates "NG Tube" "Settings: Low Intermittent Suction." Once resuscitated, Ms. Pevey was moved to the MICU, where she coded again at 10:47 a.m., according to the records, and chest compressions were started. However, Ms. Pevey ultimately died. At 12:14 p.m., signed at 12:19 p.m., there is a "Post code blue note" noting that the reason a

code was called was "PEA arrest" and that the patient was given CPR for twenty-six minutes, which efforts were terminated at 11:13 a.m. There is also a note from 12:18 p.m. acknowledging a "Critical Event[,]" and at 12:22 p.m., a discharge note that Ms. Pevey expired.

Later, Nurse Augustine entered a nurse note as follows:

> PT sitting upright in bed. Assisting PT with medications by mouth with pudding. PT exhibits difficulty swallowing while taking medications. PT began choking and exhibiting signs of aspiration. Choking stopped. But I could hear garling [sic] sounds while breathing. Respirations increased to 28 per minute. O2 was applied at [indecipherable] LPM per NC. Assessed O2 sat and it was noted to be wide-ranging. Fluctuating from 80%-90%. Contacted RT to assist with deep suctioning. Left room momentarily to retrieve suctioning equipment and upon arrival along with RT. PT was noted to be blue in the face with no chest rise. Assessed for carotid pulse and none was present. Called for code team and immediately began chest compressions. . . . . The above events occurred during morning medication administration.

Dr. William Scott Cantwell noted that, after being resuscitated, Ms. Pevey was moved to the MICU with "aspiration and respiratory arrest leading to cardiac arrest[.]" Additionally, Dr. Daniel R. Oas notes, "I was called this morning by the nurse, Johnathan, to notify me that she [Ms. Pevey] had a cardiac arrest due to questionable aspiration." Ms. Pevey's medical records also indicate a discharge diagnosis of "1. Cardiac arrest. 2. Open reduction and internal fixation, right hip fracture. 3. Cardiac disease."

As NP Williams is a qualified healthcare provider pursuant to La.R.S. 40:1231.8, Plaintiffs filed a request for a Medical Review Panel ("MRP"). The MRP issued a unanimous opinion finding NP Williams did not breach the standard of care.

Thereafter, Plaintiffs filed suit in district court against NP Williams, Nurse Augustine, and Rapides Regional Medical Center. Plaintiffs alleged that NP

3

Williams entered the room when Ms. Pevey was aspirating and did nothing to assist Nurse Augustine, "did nothing reactive to the changes in Ms. Pevey's clinical status[,]" and did not perform "life saving measures on Ms. Pevey as she was clearly aspirating and choking to death in her presence." The Petition for Damages alleges:

> Rapides Regional Medical Center, Johnathan Augustin, Kristin Williams and/or their employees and others for whom they are responsible, were negligent, at fault, and breached the standard of care in the following non-exclusive particulars:
>
> a) Failing to provide proper medical treatment to Sylvia White Pevey;
>
> b) Failing to appropriately treat Sylvia White Pevey;
>
> c) Failing to evaluate Sylvia White Pevey as a high risk for aspiration, despite her exhibiting several of the risk factors;
>
> d) Failing to timely administer lifesaving respiratory procedures to Sylvia White Pevey; and
>
> e) Administering pills orally causing Sylvia White Pevey to choke and/or aspirate.

NP Williams filed a motion for summary judgment contending that Plaintiffs could not carry their burden in proving either that NP Williams breached the standard of care, or, if it was breached, that Ms. Pevey's injuries were caused by NP Williams' alleged negligence. In support of her motion, NP Williams attached the MRP's opinion and alleged that Plaintiffs have not produced any countervailing affidavits to rebut the panel's opinion.[1]

In opposition to summary judgment, Plaintiffs attached the affidavit of Helen Neil, RN, MSN-HCSM, CLNC, FCN, a nursing expert. Therein, Neil opined regarding the standard of care applicable, and set forth what she believed

---

[1] Williams also included Plaintiffs' MRP complaint, the affidavit of panel member Dr. Thomas James Gullatt, Plaintiffs' petition, and Williams' answer to the petition.

were several failings on the part of NP Williams that caused Ms. Pevey's ultimate demise. Plaintiffs also attached excerpts of NP Williams' deposition and excerpts from Ms. Pevey's medical records. Plaintiffs asserted that, because they have submitted the affidavit of Neil, summary judgment must be denied.

In reply, Defendant argued that a Registered Nurse cannot attest to the standard of care required of a Nurse Practitioner like NP Williams, let alone to causation. Plaintiffs' filed a surreply addressing these issues, arguing that basic nursing care standards apply to this event, which Neil can attest to.

At the summary judgment hearing, the trial court concluded that according to statute, a Registered Nurse cannot opine regarding the standard of care applicable to a cardiologist Nurse Practitioner. Therefore, the trial court granted Defendant's summary judgment. The judgment at issue on this appeal specifically states, "the Court specifically finds based on the evidence presented that defendant, KRISTIN WILLIAMS, NP, was not at fault, did not cause plaintiffs' injuries[.]"

Plaintiffs filed a timely writ application with this court. This court denied the writ, finding the judgment was an appealable judgment and considered the writ application a timely filed motion for appeal. Now, Plaintiffs appeal the summary judgment dismissing NP Williams and assert one assignment of error, that "[t]he trial court erred in granting Defendant's Motion for Summary Judgment by failing to allow a nurse to offer an opinion as to medical care within her specialty, when she clearly exhibited knowledge of the requisite care at issue."

**STANDARD OF REVIEW:**

On appeal, the grant of summary judgment is reviewed de novo, "using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether a genuine issue of material fact exists and

whether the mover is entitled to judgment as a matter of law." *Supreme Servs. and Specialty Co., Inc. v. Sonny Greer, Inc.*, 06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638. Louisiana Code of Civil Procedure article 966(D)(1) provides that when "the mover will not bear the burden of proof on the issue before the court on the motion for summary judgment[,]" then the mover need only point to "the absence of factual support for one or more elements essential to the adverse party's claim[.]" Thereafter, it is the adverse party's burden to "present evidence sufficient to show a genuine issue of material fact." *Blood v. Sw. Med. Ctr.*, 12-450, p. 2 (La.App. 3 Cir. 11/7/12), 102 So.3d 1053, 1055. If the adverse party "fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact[,]" and summary judgment should be granted. *Samaha v. Rau*, 07-1726, p. 5 (La. 2/26/08), 977 So.2d 880, 883 Summary judgment is appropriate only if the "motion, memorandum, and supporting documents show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

**DISCUSSION:**

In the context of a medical malpractice claim against a nurse, the plaintiff is required under La.R.S. 9:2794 to establish, by a preponderance of the evidence:

> (1) . . . the degree of skill ordinarily employed, under similar circumstances, by the members of the nursing or health care profession in good standing in the same community or locality; (2) she either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with her best judgment in the application of that skill; and (3) as a proximate result of this knowledge or skill or the failure to exercise this degree of care, the plaintiff suffered injuries that would not, otherwise, have occurred.

*Odom v. State ex rel. Dep't of Health and Hosps.*, 98-1590, pp. 7-8 (La.App. 3 Cir. 3/24/99), 733 So.2d 91, 96-97; *see also Blood*, 102 So.3d 1053.

"Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony." *Samaha*, 977 So.2d at 884.

In support of summary judgment, NP Williams submitted into evidence the MRP's unanimous opinion, and an affidavit from Dr. Thomas James Gullatt, one of the panel members. Based on this evidence, NP Williams asserts, "there is no evidence to support the allegations that: 1) KRISTIN WILLIAMS, NP, deviated from the appropriate standard of care or 2) caused this patient harm." This court has considered MRP opinions when ruling on a summary judgment motion. *See Reinke v. Kordisch*, 13-1093 (La.App. 3 Cir. 3/5/14), 134 So.3d 176; *Palombo v. Bacque,* 06–218 (La.App. 3 Cir. 5/31/06), 931 So.2d 1226, *writ denied*, 06–1698 (La. 10/6/06), 938 So.2d 82.

In this case, the MRP opinion stated:

> The panel finds the evidence does not support the conclusion that Kristin Williams, Nurse Practitioner, failed to comply with [the] acceptable standard of care of Ms. Sylvia Pevey. When NP Williams presented to Ms. Pevey's room, she recognized the distress Ms. Pevey was in and moved expeditiously by performing a physical assessment, increasing the oxygen to stabilize the patient and ordering suction, all of which were appropriate interventions. As a cardiology Nurse Practitioner, she recognized the issues [sic] was a lung issue, not cardiac, as Ms. Pevey's heart was functioning and the patient had no chest pain. NP Williams talked to the family and the RN regarding Ms. Pevey's condition. The [panel] finds no deviation of care by Kristin Williams, N.P.

Dr. Gullatt, further attested that "the evidence did not support the conclusion that [NP Williams] deviated from the applicable standard of care . . . and that no conduct by [NP Williams] was causative of any harm to the patient herein."

Because NP Williams pointed to a lack of factual support for two elements essential to Plaintiffs' claim, Plaintiffs were required to "present evidence sufficient to show a genuine issue of material fact." *Blood*, 102 So.3d at 1055. In opposition, Plaintiffs presented the affidavit of Neil, which they assert is enough to overcome their summary judgment burden. Although Plaintiffs specifically argue that the trial court erred in finding that Neil could not opine as to the deviation of the standard of care of NP Williams, we must review the record de novo and decide whether Plaintiffs carried their burden in presenting evidence sufficient to show a genuine issue of material fact regarding both deviation from the standard of care and causation.

It is well settled that nurses are subject to the same standard as physicians. *Odom*, 733 So.2d 91. Louisiana Revised Statutes 40:1231.1(A) provides that the standard of care of health care providers "shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill."[2] "Where the defendant physician practices in a particular specialty and the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians within that specialty." *Domingue v. La.*

---

[2] Louisiana Revised Statutes 40:1231.1 was redesignated from La.R.S. 40:1299.41, effective August 1, 2015. The new statute did not change the cited language.

*Guest House, LLC*, 17-633, p. 6 (La.App. 3 Cir. 12/6/17), 258 So.3d 3, 6, *writ denied*, 18-14 (La. 2/23/18), 237 So. 3d 517 (quoting *Vanner v. Lakewood Quarters Ret. Cmty.*, 12-1828, p. 6 (La.App. 1 Cir. 6/7/13), 120 So.3d 752, 755-56).

NP Williams is a cardiology Nurse Practitioner, whereas Neil, Plaintiffs' expert, is a Registered Nurse. NP Williams asserts Neil cannot testify regarding the standard of care applicable to a Nurse Practitioner. However, our courts have recognized that it is the training and knowledge of the requisite subject matter, rather than the specialty, that is ultimately determinative of whether an expert may testify as to the degree of care that should be exercised. *See* La.R.S. 9:2794; *Hebert v. Podiatry Ins. Co. of Am.*, 96-567 (La.App. 3 Cir. 10/9/96), 688 So.2d 1107; *McGregor v. Hospice Care of Louisiana in Baton Rouge, LLC*, 13-1970, p. 5 (La.App. 1 Cir. 10/24/14) (unpublished opinion).

A person may qualify as an expert to testify regarding standard of care if the witness meets those requirements in La.R.S. 9:2794, including that the witness "has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim" and "is qualified on the basis of *training or experience* to offer an expert opinion regarding those accepted standards of care." (emphasis added). The first circuit in *Ricker v. Hebert*, 94-1743, p. 4 (La.App. 1 Cir. 5/5/95), 655 So.2d 493, 495 (citations omitted), further explained:

> In determining whether testimony regarding the standard of care will be limited under Revised Statute 9:2794(A) to a specialist who practices the same specialty as the defendant, the operative statutory phrase is "where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved." Where the procedure alleged to be negligently performed is one that is not limited to a particular specialty, and where there is no showing that

the standard of care is different for different medical disciplines, an expert with knowledge of the requisite procedure should be allowed to testify regarding the standard of care for performing that procedure.

"[O]ur jurisprudence has recognized that where medical disciplines overlap, it is appropriate to allow a specialist in one field to give expert testimony as to the standard of care applicable to areas of the practice of medicine common to both disciplines." *Pertuit v. Jefferson Par. Hosp. Serv. Dist. No. 2*, 14-752, p. 6 (La.App. 5 Cir. 5/14/15), 170 So.3d 1106, 1110, *writ denied*, 15-1176 (La. 9/18/15), 178 So.3d 152. *See also*, *Benson v. Rapides Healthcare Sys. L.L.C.*, 15-1083 (La.App. 3 Cir. 4/6/16), 188 So.3d 1139, *writ denied*, 16-1144 (La. 10/10/16), 207 So.3d 404; *Smith v. Clement*, 01-87 (La.App. 3 Cir. 10/3/01), 797 So.2d 151, *writs denied*, 01-2878 (La. 1/25/02), 807 So.2d 249 and 01-2982 (La. 1/25/02), 807 So.2d 843.

Additionally, our courts look to La.Code Evid. art. 702 in qualifying medical experts, which similarly focuses on an expert's knowledge and training:

A. A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(2) The testimony is based on sufficient facts or data;

(3) The testimony is the product of reliable principles and methods; and

(4) The expert has reliably applied the principles and methods to the facts of the case.

Although the areas of Nurse Practitioner and Registered Nurse differ, it is Plaintiffs' argument that Neil can attest to the standard of care applicable in this case because, at the time NP Williams was observing Ms. Pevey, she was not

present in her Nurse Practitioner capacity, but instead was providing general nursing care. Neil attests that:

> 8. The standards applicable to the care of Kristen Williams, NP during her treatment of Mrs. Pevey are standards for basic nursing care. It is these standards that Kristen [sic] Williams breached. The standards of care for nurses are applicable to Kristen [sic] Williams and the care she provided to Sylvia Pevey.[3]

A Nurse Practitioner is defined by La.R.S. 37:913(1)(d) as

> an advanced practice registered nurse educated in a specified area of care and certified according to the requirements of a nationally recognized accrediting agency . . . or as approved by the board and who is authorized to provide primary, acute, or chronic care . . . acting within his scope of practice[.]

A Registered Nurse is defined as "any individual licensed under this Part to engage in the practice of nursing as defined in Paragraph (14) of this Section." La.R.S. 37:913(15). Section 14 describes "registered nursing" and states:

> "Registered nursing" means the practice of the scope of nursing which is appropriate to the individual's educational level, knowledge, skills, and abilities, including:
>
> (a) Assessing the health status of an individual or group of individuals.
>
> (b) Establishing a nursing diagnosis and identifying health care needs, or both.
>
> (c) Establishing goals to meet identified health care needs.
>
> (d) Planning nursing care measures.
>
> (e) Implementing nursing care through such services as case finding, health instruction, health counseling, providing care supportive to or restorative of life and well-being, and executing health care regimens as prescribed by licensed physicians, dentists, or other authorized prescribers.

---

[3] However, we note that Neil also attests to the standard of care and actions NP Williams should have taken as an advanced practice nurse, though Neil was not argued to be an advanced practice nurse.

11

(f) Delegating nursing interventions to qualified nursing personnel in accordance with criteria established by the board.

(g) Maintaining nursing care rendered directly or indirectly.

(h) Evaluating human responses to interventions.

(i) Teaching the theory and practice of nursing.

(j) Managing and supervising the practice of nursing.

(k) Collaborating with licensed physicians, dentists, and other health care providers in the management of health care.

(l) Performing additional acts which are recognized within standards of nursing practice and which are authorized by the board.

"Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor." *Domingue*, 258 So.3d at 6 (quoting *Vanner*, 120 So.3d at 755). Upon review, we find that Plaintiffs have raised a genuine issue of material fact—that if there is overlap between the duties of NP Williams and a Registered Nurse, Neil could give an expert opinion regarding that overlap. Further, determining whether NP Williams was operating in any area of overlap between her Nurse Practitioner expertise and general nursing care requires a factual determination. Therefore, summary judgment is not appropriate on this issue.

Despite the outcome on the standard of care issue, Plaintiffs must also demonstrate by a preponderance of the evidence that a causal nexus exists between NP Williams' alleged breach of the standard of care and Ms. Pevey's death. "The defendant/physician's conduct 'must increase the risk of a patient's harm to the extent of being a substantial factor in causing the result but need not be the only cause." *Pfiffner*, 643 So. 2d at 1230, fn. 1. Although causation is usually an issue

12

left for the factfinder's determination, causation may be determined on summary judgment "if reasonable minds could not differ." *Rogers v. Hilltop Ret. & Rehab. Ctr.*, 13-867, pp. 8-9 (La.App. 3 Cir. 2/12/14), 153 So.3d 1053, 1060 (quoting *Henderson v. Homer Mem'l Hosp.*, 40, 585, p. 11 (La.App. 2 Cir. 1/27/06), 920 So.2d 988, 995, *writ denied*, 06-491 (La. 5/5/06), 927 So.2d 316).

Plaintiffs' submitted Neil's affidavit as well as Ms. Pevey's medical records to meet this burden. Plaintiffs argue that Ms. Pevey's medical records, specifically the physician notes, document the causal connection between NP Williams' substandard care and Ms. Pevey's harm. We note that in cases involving patients with complicated medical histories or conditions, expert testimony regarding causation is necessary. *See Rogers*, 153 So.3d 1053; *See also Juge v. Springfield Wellness, L.L.C.*, 18-736 (La.App. 1 Cir. 2/28/19), 274 So.3d 1, *writ denied*, 19-513 (La.5/28/19), 273 So.3d 309 (finding that expert testimony was required, not merely medical records, to prove plaintiff would be able to satisfy her burden of proof at trial). Therefore, if the alleged negligence is not an obviously careless act, Plaintiffs were required to produce an expert *witness* to meet their burden on causation.

In response to Neil's affidavit as expert testimony regarding causation, NP Williams argues that a Registered Nurse cannot make determinations regarding medical diagnoses. *See* La.R.S. 37:913(13) ("the practice of nursing or registered nursing shall not be deemed to include acts of medical diagnosis[.]"). *See also Dade v. Clayton*, 2012 WL 5288005 (W.D. La. 2012) (not reported) ("[I]n Louisiana, the license to practice nursing does not include the authority to render medical diagnoses. . . . Under similar circumstances, courts in other states have held that nurses are not qualified to render opinions on medical causation.").

13

However, in *Browning v. West Calcasieu Cameron Hospital*, 03-332, p. 14 (La.App. 3 Cir. 11/12/03), 865 So.2d 795, 807, *writ denied*, 03-3354 (La. 2/13/04), 867 So.2d 691, this court determined causation was "an inappropriate question at the summary judgment stage." In *Browning*, the plaintiffs alleged that the delay in transporting the decedent to the hospital caused or contributed to her death from a heart attack. The responding paramedics admitted that they should have transported the decedent the first time they were called (they were called twice) and that she would have been placed on a cardiac monitor at the hospital to immediately detect a heart condition. Although no expert evidence was presented regarding causation, the court considered the testimony of the responding paramedics and the facts of the case in light of *Estate of Adams v. Home Health Care of Louisiana*, 00-2494 (La. 12/15/00), 775 So.2d 1064 (finding expert testimony unnecessary in a delayed treatment case that resulted in amputation). Thereafter, the *Browning* Court concluded:

> We find the Brownings' failure to proffer expert evidence to prove causation unimportant at this stage in the proceedings, even though, ultimately, its absence may weaken their case, since the delay in diagnosing and treating Mrs. Browning's heart condition was surely a factor in bringing about her eventual demise. . . .
>
> Thus, we find that the Brownings did not need to present expert testimony to prove the existence of a causal connection between WCCH's alleged negligence and Mrs. Browning's death.

*Id.* at 807.

On the contrary, in *Jackson v. Suazo-Vasquez*, 12-1377 (La.App. 1 Cir. 4/26/13), 116 So.3d 773, the court determined that cause of death or loss of chance was beyond the expertise of a Registered Nurse. The plaintiffs asserted the case was one of obvious negligence where a lay person could determine the relationship between elevated blood pressure and stroke. However, the first circuit noted the

deceased's complicated medical history, which included hypertension, diabetes, and end-stage renal disease, concluding that "the issue is inextricably bound to the complex medical determination of the cause of Ms. Johnson's death. Such a determination requires an assessment of her complicated medical history, the multitude of serious medical conditions from which she suffered, and the effect the defendants' acts and/or omissions had upon her." *Id*. at 778.

The record in the current case indicates NP Williams was present in the room while Ms. Pevey was aspirating. She examined Ms. Pevey and ordered Nurse Augustine to titrate oxygen and suction, then left. Nurse Augustine went to retrieve suctioning equipment and, upon his return, found Ms. Pevey to be "blue in the face with no chest rise." Nurse Augustine then called for a code. Although resuscitated, Ms. Pevey coded again at 10:47 and all efforts to save her life were terminated at 11:13. Considering the progression of events (aspiration, blue in the face with no chest rise, code), we find this case more like *Browning* and *Estate of Adams*. Because causation is usually an issue left for the factfinder's determination, causation in this case is more appropriately decided by a trial on the merits.

Therefore, we find that Plaintiffs presented evidence sufficient to show a genuine issue of material fact and that NP Williams is not entitled to judgment as a matter of law. Thus, we reverse the trial court's grant of summary judgment and remand for further proceedings.

**REVERSED AND REMANDED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.

15