STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2020 CA 1250

COLIN JONES AND SHANNON JONES

VERSUS

BATON ROUGE GENERAL MEDICAL CENTER-BLUEBONNET

Judgment Rendered: **JUN 0 4 2021**

* * * * *

On Appeal from the
19th Judicial District Court
Parish of East Baton Rouge, State of Louisiana
Trial Court No. 674,841

The Honorable Timothy E. Kelley, Judge Presiding

* * * * *

Earl A. Marcelle, III
Baton Rouge, Louisiana

Attorney for Plaintiffs-Appellants,
Colin Jones and Shannon Jones


Craig J. Sabottke
Michael M. Remson
Courtenay S. Herndon
Baton Rouge, Louisiana

Attorneys for Defendant-Appellee,
Baton Rouge General Medical Center-Bluebonnet

* * * * *

BEFORE: THERIOT, WOLFE, AND HESTER, JJ.

**WOLFE, J.**

This is a wrongful death and survival claim arising from alleged medical malpractice during the treatment of a forty-two year old woman, Charlotte Dionne Smith-Lyons ("Charlotte"), at Baton Rouge General Medical Center – Bluebonnet ("BRGMC"). Charlotte's siblings, Colin Jones and Shannon Jones, appeal a summary judgment rendered in BRGMC's favor that dismissed BRGMC from the litigation with prejudice. On appeal, we affirm.

## BACKGROUND

On July 3, 2012, Charlotte was admitted to BRGMC for treatment of a staph infection related to her medical condition, scleroderma, which is a chronic connective tissue disease that is generally classified as one of the autoimmune rheumatic diseases.[1] Charlotte's treatment with antibiotics caused a complication that resulted in acute renal failure and required dialysis. While on dialysis, Charlotte suffered from seizures that necessitated resuscitation, care, and treatment in the intensive care unit ("ICU") at BRGMC on July 11, 2012. Charlotte's care required that she be on a ventilator from July 17-22, 2012, and she was listed as a patient who was under a "seizure precaution." The first day off the ventilator, on the morning of July 23, 2012, Charlotte was alert, talking, ate breakfast, and participated in a physical therapy session. After physical therapy, Charlotte requested that an ICU nurse close the privacy curtain for her ICU room so that she could rest. Approximately twenty minutes later at 10:23 a.m., a phlebotomist entered Charlotte's ICU room and discovered her unresponsive on the floor. A code blue was immediately initiated and Charlotte was re-intubated. Charlotte was taken off the ventilator on August 3, 2012, because no brain activity had been registered since she was found on the floor. The cause of Charlotte's death was listed as anoxic brain

---

[1] See *What is Scleroderma?*, online at Scleroderma Foundation Webpage (2021), http://www.scleroderma.org.

2

injury (caused when the brain is deprived of oxygen, not trauma), secondary to cardiac arrest, secondary to renal failure, and secondary to scleroderma.

On May 10, 2013, Charlotte's siblings filed a medical malpractice complaint against BRGMC, alleging vicarious liability for multiple failures on the part of BRGMC's ICU staff in properly monitoring and responding to Charlotte's particular medical needs. On July 2, 2018, a medical review panel ("MRP") consisting of three expert physicians met and unanimously concluded that there was no deviation from the standard of care by BRGMC. The MRP findings were that Charlotte had multiple comorbidities, including scleroderma, pulmonary hypertension, pulmonary fibrosis, and methicillin resistant staph cellulitis. The MRP found that the ICU nurses followed protocol regarding side rails and fall precautions, concluding it was appropriate to honor Charlotte's wishes to close the privacy curtain in this case. The MRP also maintained that Charlotte was appropriately telemetry monitored by the nursing staff and other healthcare providers. Additionally, the MRP opined that if Charlotte experienced a fall, as alleged by her siblings, she was properly worked up for possible head trauma even though the findings showed no evidence of acute head trauma.

Charlotte's siblings filed the instant suit on October 9, 2018. They asserted that the ICU nurse's closure of the privacy curtain in Charlotte's room on July 23, 2012, along with inappropriate monitoring of a seizure-risk patient, was a deviation from the standard of care in an ICU room. Charlotte's siblings sought damages related to Charlotte's suffering and wrongful death. BRGMC moved for summary judgment on May 3, 2019, based on the contention that Charlotte's siblings had no medical expert testimony to show that BRGMC or its ICU staff breached the applicable standard of care or caused the alleged damages. In support of the motion for summary judgment, BRGMC provided a certified copy of the unanimous MRP opinion, including reasons, interrogatories and requests for production propounded

on Charlotte's siblings, the petition for damages, and affidavits of two MRP members. BRGMC relied on the unanimous findings of the MRP members where they specifically noted it was appropriate to close the privacy curtain in this case, since Charlotte was on a telemetry monitor to alert staff in the event of a medical emergency.

Charlotte's siblings opposed the summary judgment, without identifying a medical expert witness, arguing that negligence should be inferred against BRGMC, because there was an obvious lack of appropriate monitoring of Charlotte in the ICU. Charlotte's siblings contend that the undisputed fact that ICU staff closed Charlotte's privacy curtains in her ICU room, when Charlotte was under a seizure precaution and she was a fall-risk patient, was clearly below the appropriate standard of care. Charlotte's siblings also maintain that fifteen to twenty minutes for an ICU staff member to respond to an alarm from a telemetry monitor is negligent and careless. Therefore, Charlotte's siblings argued that expert testimony was not required because of the obviously careless actions on the part of BRGMC's staff. Alternatively, Charlotte's siblings argued that the doctrine of *res ipsa loquitur* applies in this case where the circumstantial evidence suggests that negligence is the most probable explanation for Charlotte's injury and death since no one actually knows what caused Charlotte to be unconscious on the floor in her ICU room. In support of their opposition to summary judgment, Charlotte's siblings attached various nurses' flowsheet documents prepared during Charlotte's ICU treatment that show Charlotte was a fall and seizure risk and that an unwitnessed fall occurred, an affidavit of the physician that responded to the code blue, Dr. Hannah H. Pounds, and excerpts of submissions to the MRP.

## DISCUSSION

Appellate courts review summary judgments *de novo*, using the same criteria as trial courts in determining whether summary judgment is proper; *i.e.* whether

4

there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. **Samaha v. Rau**, 2007-1726 (La. 2/26/08), 977 So.2d 880, 882-883. A genuine issue is one as to which reasonable persons could disagree. **Hines v. Garrett**, 2004-0806 (La. 6/25/04), 876 So.2d 764, 765 (*per curiam*). A fact is material when its existence or nonexistence is essential to the plaintiff's cause of action. **Smith v. Our Lady of the Lake Hosp., Inc.**, 93-2512 (La. 7/5/94), 639 So.2d 730, 751. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. **Id.**

As the mover, BRGMC has the initial burden of proving its entitlement to summary judgment as a matter of law. See La. Code Civ. P. art. 966(D)(1). If BRGMC fails to satisfy this initial burden, then the burden never shifts to Charlotte's siblings to produce evidence in opposition to BRGMC's motion. In this case, BRGMC clearly pointed out that the MRP medical experts unanimously concluded that there was no breach of the standard of care given to Charlotte in the ICU at BRGMC. Breach of the standard of care is an essential element of a medical malpractice action. See La. R.S. 9:2794; **Samaha**, 977 So.2d at 883-884. Thus, the burden shifted to Charlotte's siblings to produce factual support sufficient to establish the existence of a genuine issue of material fact regarding a breach of the standard of care that caused Charlotte's death. See La. Code Civ. P. art. 966(D)(1). Mere conclusory allegations, improbable inferences, and unsupported speculation will not support a finding of a genuine issue of material fact. **Guillory v. The Chimes**, 2017-0479 (La. App. 1st Cir. 12/21/17), 240 So.3d 193, 195.

Whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Larson v. XYZ Insurance Company**, 2016-0745 (La. 5/3/17), 226 So.3d 412, 417. The substantive law applicable to this medical malpractice case is set forth in La. R.S. 9:2794. In summary, the elements that plaintiffs in a medical malpractice action must prove by a preponderance of the

evidence are: (1) the applicable standard of care; (2) a violation or breach of that standard of care; and (3) a causal connection between the breach and the resulting injury/damages. **Vanner v. Lakewood Quarters Retirement Community**, 2012-1828 (La. App. 1st Cir. 6/7/13), 120 So.3d 752, 755. Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. **Samaha**, 977 So.2d at 884. Further, it is well settled that a defendant-healthcare provider may use the MRP's favorable expert opinion to support a summary judgment motion. **Id**. at 888. See also La. R.S. 40:1231.8(H).

As previously stated, BRGMC sought summary judgment because Charlotte's siblings had no expert medical opinion regarding the standard of care and causation. However, Charlotte's siblings point out that it is obvious that an ICU patient needs to be closely monitored and there is no dispute that the ICU nurse closed Charlotte's privacy curtain and Charlotte somehow fell out of the bed before she was observed twenty minutes after the curtain was closed. We note that the attachments of nurses' flowsheets to the opposition memorandum were not objected to even though they were submitted without certification or affidavits. The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and *shall* consider any documents to which no objection is made. La. Code Civ. P. art. 966(D)(2). The record contains no objections to any of the attachments. Thus, we consider all of the attachments, except for the attachments to BRGMC's reply memorandum, which the trial court properly rejected pursuant to La. Code Civ. P. art. 966(B)(3).

As this case involves a patient with a complex medical history, who had been in the ICU unit for two weeks and had sustained several seizures that required intubation at times, the possible negligence of the ICU nurses/staff is not "so obvious

6

that a lay person can infer negligence without the guidance of expert testimony." **Samaha**, 977 So.2d at 884. Normally, in cases such as the present one involving a patient with a complicated medical history and complex medical conditions, breach of the standard of care and causation is simply beyond the province of a lay person to assess without the assistance of expert medical testimony. See **Pfiffner v. Correa**, 94-0924 (La. 10/17/94), 643 So.2d 1228, 1233-1234. Thus, Charlotte's siblings needed to prove the standard of care and breach of that standard via a medical expert. **Samaha**, 977 So.2d at 884. See also **Schultz v. Guoth**, 2010-343 (La. 1/19/11) 57 So.3d 1002, 1009, wherein the Louisiana Supreme Court stated, "In ruling on a motion for summary judgment, we are not free to simply disregard the movant's unopposed expert medical evidence."

After reviewing the evidence submitted by the parties, including all medical records, the MRP unanimously found that the evidence did not support the conclusion that BRGMC failed to meet the applicable standard of care in this case. There is no evidence to counter the MRP members' expert medical opinion. Because BRGMC affirmatively proved the absence of factual support for an essential element of Charlotte's siblings' claim, the burden shifted to Charlotte's siblings to prove the existence of a genuine issue of material fact in order to defeat summary judgment. Charlotte's siblings failed in their burden of proving that closing the privacy curtain for twenty minutes so that Charlotte could rest was a breach of the standard of care. Additionally, Charlotte's siblings' unsupported speculation and conclusory allegations about the length of time Charlotte was not monitored and what caused her to fall, do not support a finding of a genuine issue of material fact. Thus, we conclude that summary judgment was proper as a matter of law.

Finally, this is not a case where the doctrine of *res ipsa loquitur* is applicable. The doctrine permits a fact finder to infer negligence from the circumstances of the event. **Salvador v. Main Street Family Pharmacy, L.L.C.**, 2017-1757 (La. App.

7

1st Cir. 6/14/18), 251 So.3d 1107, 1112. However, the doctrine is not a substitute for factual evidence; it is applied after the factual evidence has been submitted, and then only if there is sufficient circumstantial evidence to suggest the only reasonable cause of the injury, in the context of a medical malpractice action, is a breach of the standard of care. **Id.** at 1113. Charlotte's siblings presented no evidence that BRGMC's staff breached the standard of care and the facts adduced do not permit the conclusion that Charlotte's death alone creates a presumption of negligence. The evidence in the record fails to eliminate other more probable causes of Charlotte's death that could have occurred even if the privacy curtain in her ICU room had been left open. We recognize that some of the most notable possibilities are Charlotte's previous seizure history that resulted in repeated intubations and ICU care, as well as the possibility that Charlotte's telemetry monitor was somehow disconnected as she attempted to get out of her bed unassisted. Additionally, the evidence shows that Charlotte's brain injury that led to her death was not trauma-based, but rather was from a lack of oxygen. Based on our *de novo* review, the trial court was correct in not applying the doctrine of *res ipsa loquitur*.

## CONCLUSION

The summary judgment granted in favor of Baton Rouge General Medical Center – Bluebonnet and dismissing it from this lawsuit is affirmed. All costs of this appeal are assessed to Plaintiffs-Appellants, Colin Jones and Shannon Jones.

**AFFIRMED.**

8